PLAINTIFF'S APPEAL
Plaintiff, on 17 December, 1906, entered into a contract with defendant, the material parts whereof are:
"This agreement, made this 17 December, 1906, by and between C. I. DeBruhl and Milton Prescott, trading as the Standard Lumber Company (not incorporated), New Bern, N.C. parties of the first part, and C. B. Coles Sons Co., a corporation duly created and existing under the laws of the State of New Jersey, Camden, N. J., party of the second part, witnesses: That the said party of the first part, in (184) consideration of the promises hereinafter made by the party of the second part, promises and agrees to and with said party of the second part that they will bargain, sell and deliver to said party of the second part the output of North Carolina pine lumber, not to exceed 100,000 feet per month, board measure, manufactured by said parties of the first part at their mill situated in New Bern, N.C. from the date of this agreement until 1 April, 1907; the same to be properly manufactured, kiln-dried and delivered to the barge rail at the wharf of the party of the first part at New Bern, N.C. at the following prices, subject to two per cent discount, and as further provided: . . . And the said party of the first part agrees that he will deliver to the said party of the second part 100,000 feet of the said lumber within thirty days from the date of this contract, and that he will, each thirty days during the existence of this contract, deliver to the aforesaid party of the second part 100,000 feet of the said lumber in accordance with the terms hereof; and the said party of the first part agrees to provide shelter for all the lumber herein contracted for, and store the said grades of lumber thereunder, so as to deliver all of the said lumber in good condition; and the said party of the first part agrees to sort out, pile separately and have the same loaded separately in the barge as follows: . . . And the party of the second part, in consideration of the premises, promises and agrees to and with the party of the first part that it will buy from the party of the first part all the lumber hereinbefore mentioned, and receive, measure and pay for the same in accordance with the prices, terms and conditions herein set out; and the said party of the second part agrees to advance to the said party of the first part the sum of $10 for each 1,000 feet, board measure, of the lumber of the grade of 3's and better, and the sum of $6 for each 1,000 feet, *Page 152 
board measure, of the lumber of the box grades, and shall be manufactured and stored and ready for delivery and shipment. It is mutually agreed by the parties hereto that the advances hereinbefore mentioned shall be made every two weeks, and all payments of advances shall be based on the estimate or measurement of the lumber by the party (185) of the second part or its agent. It is further agreed that no advances are to be made each two weeks on any larger amount of lumber than 50,000 feet, and the balance of the purchase money shall be paid to the party of the first part by the party of the second part when the lumber shall have been delivered to the wharf of the party of the second part at Camden, N. J., and inspected by the said party of the second part."
Plaintiff, on 7 May, 1907, brought this action, alleging that, pursuant to the terms of this contract, it was the owner and entitled to the possession of certain lumber described in the complaint. At the institution of the action plaintiff obtained a requisition from the clerk for the immediate possession of the lumber, and defendant replevied. Defendant denied that plaintiff was the owner of the lumber, and, by way of counterclaim, alleged that plaintiff failed to perform its part of the contract, whereby it sustained damages, all of which is set out in full in the answer. Plaintiff replied to the counterclaim, denying each allegation thereof.
The following issues were submitted to the jury, to which they responded, as set out in the record:
1. "Is the plaintiff the owner and entitled to the possession of the property described in the complaint?" Answer: "No."
2. "Does the defendant wrongfully detain the possession of the same from the plaintiff?" Answer: ___________.
3. "What was the value of the property at the time of the seizure?" Answer: "Two thousand dollars."
4. "Is the plaintiff indebted to the defendant upon counterclaim by reason of a breach of contract?" Answer: "Yes."
5. "If so, what is the defendant entitled to recover thereon?" Answer: "One thousand eight hundred and fifteen dollars and sixty-five cents."
6. "What amount, if any, has plaintiff advanced to defendant on account of unshipped lumber?" Answer: "Seven hundred and thirty-five dollars."
Judgment was rendered for defendant for the sum of $1,080.65, being the amount of damages assessed for breach of contract, less the amount advanced by plaintiff. Both parties, having noted exceptions, appealed.
The controversy, in regard to plaintiff's right to recover the lumber on the yard, is dependent upon the construction of the contract and the conduct of plaintiff respecting its performance of the stipulation thereof. The evidence upon this last question was conflicting. The contract is executory, and until all of the stipulations contained in it were performed, or, at least, performance with readiness and ability tendered and refused, no title vested in plaintiff. These aspects of the case were fully explained to the jury by his Honor, followed by the instruction that if the defendant had cut, graded and set apart this lumber, and plaintiff had paid for it or stood ready to pay for it, and nothing was to be done but to take charge of it, and defendant refused to permit them to do so, they should answer the first issue in the affirmative. To this instruction plaintiff excepted.
We find no error in the instructions. They are in accordance with the principles and authorities announced in Hughes v. Knott, 138 N.C. 105. It is true that the contract, being in writing, was to be construed by the court, but the plaintiff's right to demand the possession of the lumber was dependent upon the establishment of its compliance with the terms of the contract, and this was properly submitted to the jury. The first issue having been answered adversely to plaintiff, the second and third were immaterial. This brings us to an examination of plaintiff's exceptions to his Honor's instructions upon the character and measure of damages which defendant was entitled to recover.
Defendant claimed that it was entitled to deliver and plaintiff compelled to receive 100,000 feet a month from the date of the agreement to 1 April, 1907, and that it had a profit of $3 per thousand feet in the lumber. It appears that 61,098 feet were delivered, and plaintiff advanced on account thereof $700, and paid for insurance $35; that by reason of plaintiff's failure to accept and remove the quantity of lumber for which it had contracted, its yards were blocked, whereby it sustained damage; that by reason of plaintiff's failure to make advancements, as it had contracted to do, it was unable to operate its mill, and sustained a loss of profits on lumber, which it would have sold (187) if plaintiff had complied with its contract in respect to the advancement. Defendant further claimed that by reason of the failure of plaintiff to comply with its contract it was unable to meet its obligations, resulting in a destruction of its business and the sacrifice of its property, and for this it claimed a large amount of damages. His Honor excluded evidence tending to establish the last element of damage, and instructed the jury that they could not award any damage on that account. In regard to the other elements of damage he instructed the jury: "The defendant would be entitled to recover from the plaintiff such damages for any breach of the contract on the part of plaintiff as *Page 154 
may have fairly and reasonably arisen, according to the usual course of things, and for such damages as were caused by the breach of the contract, as are incident to the acts or omissions thereof, and which may have reasonably been assumed to have been in contemplation of the parties at the time of the making of the contract. The defendant would be entitled to recover such amount as it has lost by reason of blocking his yard, if you find from the evidence it was blocked; by reason of his not being able to secure the advances contemplated by the contract, if you find he did not receive the advances, and such profits as he would have made from operating the mill, if he was forced to shut down by the failure of the plaintiff to make the advances as called for in the contract. If you find that defendant had lumber on his yard, and that by reason of the plaintiff not taking it off, when he could have reasonably done so, defendant suffered loss by reason of that, you will give him whatever you find to be a reasonable allowance." To these instructions plaintiff excepted.
It will be convenient to dispose of the several elements of damage in the same order as given by his Honor. He told the jury that defendant was entitled to damages by reason of his yard being "blocked." It appears from the testimony that plaintiff was under a contract obligation to take 100,000 feet of lumber per month. This lumber was to be piled on defendant's yard until delivered to plaintiff or loaded on barge or vessel. If plaintiff failed to provide means for removing it (188) according to its contract, it would seem, in the absence of any special agreement to the contrary, that for failure to do so it would be liable for the use and occupation of so much of the yard as was occupied by the lumber after its default. For any special or consequential damage no liability would attach itself by special agreement. We find no evidence showing the rental value of the yard. The suggestion that if the yard had been relieved of the lumber which plaintiff was to take, the defendant could or would have sawed other lumber, piled it on the yard and sold it at a profit, is too speculative and remote. Too many contingencies are involved to make it a safe measure or element of damage. If one is under contract obligation to remove lumber from a yard at a given time, and fails to do so, in the absence of any special circumstance entering into the contract when made, he is liable for the use and occupation — that is, a fair rental value of the yard. In ascertaining its rental value, evidence of the manner in which it was used or capable of being used would be competent. We think that the instruction was erroneous, for two reasons: There was no evidence of the rental value of the yard to guide the jury. The jury may, in the light of the testimony admitted by the court, have well understood that they were to take into consideration the profits which defendant may have made by *Page 155 
piling lumber on the yard and selling it. This was entirely speculative. His Honor instructed the jury that defendant was entitled to recover damages by reason of his not being able to secure advances. The difficulty which is encountered in sustaining this instruction is that the only evidence of any loss to defendant in this respect was that it was unable to go on with its operations, and was compelled to close out its business, sacrificing its property. This element of damage is too remote and entirely speculative. Treated in the most favorable light for defendant, the plaintiff's obligation was to loan it money, the time and amount to be measured by the delivery and value of the lumber. The measure of damage for a failure in this respect would be any extra expense to which defendant was put to obtain the money. The failure to perform an agreement to loan a man money, unless some special and consequential damages were shown to be in contemplation of the (189) parties when the contract was made, would not subject him to speculative damage. In Green v. Goddard, 50 Mass. 212, defendants failed to meet certain bills drawn on them which they were under obligation to pay. Plaintiffs alleged that by reason of defendants' default they sustained loss in the business operations, etc. Hubbard, J., discussing this claim, says: "In regard to the claim for losses alleged by the plaintiffs to have been suffered by them in consequence of the withholding of advances by Baring Bros. Co. on the goods consigned, . . . we think the claim can not be sustained. The plaintiffs are entitled to recover for the loss directly and necessarily incurred by them in providing for the payment of these bills; but they can not claim compensation for the loss of those incidental benefits which they might have derived from the use of their money. Speculative damages (sometimes so called) are not favored in law, and the actual damage arising out of breach of contract for the nonpayment of money is usually measured by the interest of money. . . . In the use of the money, instead of realizing great profits, they might have encountered difficulties and sustained injuries unforeseen at the time, and have suffered like thousands of others. Theirs is not a loss, in the just sense of the term, but the deprivation of an opportunity for making money, which might have proved beneficial or might have been ruinous, and it is of that uncertain character which is not to be weighed in the even balances of the law nor to be ascertained by well-established rules of computation among merchants. . . . To sustain such a claim would be to sanction principles not supported by any decision with which we are acquainted, and instead of making persons sustain the direct loss arising from their neglect of engagement it would be to expose them to hazards never contemplated, and to affect them by uncertain speculations in the profits in which they could have no participation, while at the same time they would be insurers of such *Page 156 
profits to their creditors." It may be that a failure to perform an agreement to loan or advance money for a specific purpose, known to the defendant and in view of the parties to the contract, the profit to be made being fixed, would subject the defendant to damage for such loss. (190) Defendant's claim does not come within such a class. To hold the plaintiff responsible for speculative damages in this case would be a dangerous innovation upon the rule of reasonable certainty and contemplation.
His Honor further told the jury that "If defendant had lumber on his yard, and by reason of plaintiff not taking it off when he could have reasonably done so, and defendant suffered loss by reason of that, you will give him whatever you find to be a reasonable allowance." If defendant, as we have said, is entitled to recover for the use and occupation of his yard by reason of plaintiff's failure to remove according to his contract, he can not recover double damages by charging plaintiff with possible losses sustained by reason of its failure to take the lumber away. The only amount which it would seem he could sustain by plaintiff's failure to remove the lumber was the value of the use of the yard. Again, if liable at all, some measure of damages should have been given the jury for their guidance. It should not have been left to them to give whatever "they found to be a reasonable allowance." For a breach of a business contract, in the absence of any element entitling the plaintiff to vindictive or exemplary damages, he is entitled to compensation for the loss sustained by the breach. The measure or rule by which such compensation is fixed by the jury is certain and to be given them by the court as their guide. The law seeks to confine the damages to such as reasonably flow from the breach and were in the contemplation of the parties. The recovery of profits, while in some cases allowed, is confined to "such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract — that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed." Hale on Damages, 73, citing Griffin v. Colver,16 N. Y., 489. Eliminating all other elements of damage, we have this case: Plaintiff contracted to take from defendant, at a stipulated price, subject to inspection, etc., 100,000 feet of lumber a month. The lumber was to be cut, graded and piled on defendant's yard. The jury find that plaintiff failed to comply with his contract. If defendant had the lumber on its yard, ready for delivery, and plaintiff failed to take it, he (191) is liable for the difference between the contract price and what it cost defendant to cut and place the lumber on the yard — that is, the profit which defendant would have made on the lumber, subject to a reduction of such profit, if any, as defendant made by selling the *Page 157 
lumber to some other person. This is the measure of defendant's loss and plaintiff's liability. If by reason of plaintiff's failure to take the lumber according to contract the yard was "blocked," plaintiff is liable for the value of the use and occupation of the yard. In ascertaining such value, testimony of the use to which defendant could have put it, etc., is relevant. The other elements of damage are too remote and uncertain. The testimony sent up is not very full, and we are unable to do more than prescribe the general principles upon which the damage should be assessed. It appears that some three months or more intervened between the date of the contract and the period fixed for its termination. the defendant says that the profit on the lumber was from $3 to $3.35 per thousand feet. Some 61,000 feet were delivered and $735 advanced on the undelivered lumber. It would seem an easy matter to calculate the damages. In no aspect of the testimony does it appear that by any measure of damages could the jury have correctly arrived at the sum of $1,815. All in excess of the profits on the lumber which plaintiff failed to take is speculative; that is, we find nothing in the evidence to guide the jury to the conclusion that defendant lost that sum by reason of damages reasonably within the contemplation of the parties, etc. For the reasons given, there must be a new trial on the fifth issue.
New Trial.
DEFENDANT'S APPEAL.