TOM PEMBERTON ET AL. v. CITY OF GREENSBORO.

(Filed 18 September, 1935.)

1. **Eminent Domain C e: Municipal Corporations E f—Value of business as going concern is not element of damage for taking land.**

Plaintiffs brought this action against a municipality to recover damages to their land and personal property by reason of the discharge of sewage by the city through a bi-pass into a creek adjoining plaintiffs' lands, and plaintiffs introduced evidence that by reason of the city's alleged wrongful acts they had been forced to discontinue their dairy business theretofore conducted by them on the land. *Held:* Although the rendering of plaintiffs' land unfit for dairying might be an element of damage as tending to diminish the value of the land, the value of plaintiffs' dairy as a going concern is not a recoverable element of damage for the partial taking of the land under the power of eminent domain, and a new trial is awarded on defendant's exceptions to the admission of evidence and the charge of the court relating to this aspect of the case, it being apparent from the record that the value of plaintiffs' dairy business was considered by the jury in awarding the recovery.

2. **Municipal Corporations H d—Individual may not recover damage to property resulting from enforcement of health ordinance.**

Where the owners of a dairy are prohibited from selling milk in a city because of danger to the public health arising from the fact the city emptied sewage in a stream contiguous to the pasture, causing disease among the cattle, the owners of the dairy, in an action against the city for the partial taking of the land, may not recover damages resulting from the loss of their dairy business by reason of the enforcement of the valid ordinance, the health ordinance being governmental in character and function, and grounded in the police power.

3. **Appeal and Error J g—**

Where a new trial is awarded upon exceptions duly taken, other exceptions relating to matters which may not arise on a subsequent hearing need not be considered.

APPEAL by defendant from *Alley, J.,* at October Term, 1934, of GUILFORD.

Civil action to recover damages for alleged nuisance or wrongful appropriation of plaintiffs' properties.

Plaintiffs own a dairy farm on the outskirts of the City of Greensboro. On 6 December, 1930, defendant completed the installation of a "plain sedimentation trickle filter" type of sewerage disposal plant with supposed capacity of 7½ million gallons per day. A spill-way or bi-pass, with levee or dike, to take care of any overflow, due to impediment of operation, freshet, snow, ice, etc., was constructed from the plant, along the edge of plaintiffs' property, and empties into Buffalo Creek. When sewage is bi-passed, it sometimes overflows, gets upon plaintiffs' lands, and is injurious to their pasture, farming operations, etc. In the summer of 1931, plaintiffs' lands became inoculated with anthrax germs which passed through defendant's sewerage system, and their entire dairy business was destroyed. This suit is to recover for the resultant damages.

Over objections and exceptions, duly entered, the plaintiff was allowed to testify as follows:

"Q. Did you have Dr. Hudson (City Health Officer) come out there and see the conditions around your place?

"A. No, sir, he came on his own hook. He told me I could not sell any more milk.

"Q. After this group died, did Dr. Hudson make any new order about selling milk?

"A. Yes, sir, that we could start again on the first Monday in September, I think it was. We started to deliver milk on Monday morning, and on Monday night we found another dead cow, and we immediately got in touch with Dr. Moore and Dr. Hudson, and they said sell no more milk. We have not sold any since."

And further:

"Q. Now, Mr. Pemberton, about what was the capacity per day of your dairy in the production of milk?

"A. About 225 gallons. I have been selling that milk in Greensboro.

(By the court: Gentlemen, that evidence is admitted, not for the purpose of showing the measure of damages, but is limited to the purpose that you may have before you the entire situation.)

"Q. What was the approximate monthly earning of your dairy, immediately prior to the act complained of?

"A. From $1,200 to $1,500 a month.

"Q. And after the acts complained of, what were you able to earn in the prosecution of the dairy business referred to?

"A. Nothing."

At the close of plaintiffs' evidence, the court made the following ruling for the guidance of the jury: "As to plaintiffs' production, the amount of milk, etc., that they received from their dairy . . . and their earnings, I will let my former ruling stand. You are to consider that, not as any measure of damages, but only to the end that you may have before you . . . the entire situation."

As bearing on the same matters, the following excerpts, taken from the charge, are assigned as errors:

1. "Now, the plaintiffs have offered evidence tending to show that following those instructions from Dr. Hudson, which they did not feel like other than to obey, their dairy business was stopped . . . virtually destroyed, and the plaintiffs commenced to get rid of such of their cattle as had not died, etc."

2. "So, the plaintiffs contend, gentlemen, that their business was destroyed and the value of their land impaired so that it is practically worthless now, and that you ought to award them permanent damages in the amount claimed by them as the direct and proximate result of defendant's wrong."

3. "Our court has held, with respect to evidence tending to show the earnings and production of plaintiffs' dairying proposition, that it is not admissible as tending to show the measure of damages, but to aid the jury in estimating the extent of the injury sustained. It is admissible and relevant when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, so that the jury may have before them all the facts and circumstances of the case having any tendency to show damages or their probable amount, so as to enable the jury to make the most intelligible and probable estimate which the nature of the case will permit."

The court refused to give the following instruction, duly requested by the defendant:

"The court instructs the jury that the plaintiffs are not entitled to recover any damages in this action by reason of any act of any public official in connection with the exercise of public authority in declaring a quarantine of plaintiffs' herd or even the destruction thereof."

The plaintiffs have cultivated their farm since 1931, raising corn, wheat, vegetables, and pasturing cattle, but their dairy business has been abandoned. The evidence is conflicting as to whether the complete abandonment of the dairy business was advisable or necessary.

Upon denial of liability and issues joined, the jury returned the following verdict:

"1. Are the plaintiffs the owners of the lands described in the complaint? A. Yes.

"2. Are the plaintiffs, Tom Pemberton and wife, Jeanie Pemberton, the owners of the personal property mentioned and described in the complaint? A. Yes.

"3. Was the plaintiffs' property injured and damaged by reason of the creation and maintenance of a nuisance by the defendant, as alleged in the complaint? A. Yes.

"4. Did the plaintiffs, within 6 months from the time the first substantial injury to their property was sustained, give notice to the defendant of their claim for damages as required by law? A. Yes.

"5. What permanent damages, if any, are the plaintiffs entitled to recover of defendant?

"(A) For the taking in whole or in part of the plaintiffs' lands by reason of the construction or the operation of the defendant's sewer system and disposal plant? A. $12,825.

"(B) For the taking in whole or in part of the personal property of the plaintiffs, Tom Pemberton and wife, Jeanie Pemberton, by reason of the construction or operation of its sewer system and disposal plant? A. $20,000."

Judgment on the verdict, from which the defendant appeals, assigning errors.

*Frazier & Frazier, Smith, Wharton & Hudgins and James S. Duncan for plaintiffs.*

*Andrew Joyner, Jr., and Sapp & Sapp for defendant.*

STACY, C. J. This is the same case that was before us, on procedural questions, on two former appeals, reported in 203 N. C., 514, 166 S. E., 396, and 205 N. C., 599, 172 S. E., 196.

It is manifest from the court's rulings and the jury's verdict that plaintiffs have been awarded compensation for the loss of their dairy business. True, the judge told the jury the earnings and production of plaintiffs' dairy were not admissible as tending to show the measure of damages, still such evidence was received in order to place before the jury "the entire situation,  .  .  .  all the facts and circumstances having any tendency to show damages, or their probable amount," and "to aid the jury in estimating the extent of the injury sustained." This would seem to be at variance with the rule for the admeasurement of damages in compensation cases. *Gray v. High Point,* 203 N. C., 756, 166 S. E., 911; *Cook v. Mebane,* 191 N. C., 1, 131 S. E., 407; *Moser v. Burlington,* 162 N. C., 141, 78 S. E., 74; *Metz v. Asheville,* 150 N. C., 748, 64 S. E., 881; *Williams v. Greenville,* 130 N. C., 93, 40 S. E., 977.

There are instances, of course, *e.g.,* breach of special contract, *Oil Co. v. Burney,* 174 N. C., 382, 93 S. E., 912, rental contract, *Brewington v. Loughran,* 183 N. C., 558, 112 S. E., 257, when the value of an established and going business may properly constitute an element of recoverable damages, but not so in cases of injury to "property" growing out of the exercise of the right of eminent domain. *Sawyer v. Commonwealth,* 182 Mass., 245, 65 N. E., 52, 59 L. R. A., 726.

Speaking to the subject in the cited case, *Holmes, C. J.,* delivering the opinion of the Court, said: "It generally has been assumed, we think, that injury to a business is not an appropriation of property which must be paid for. There are many serious pecuniary injuries which may be inflicted without compensation. It would be impracticable to forbid all laws which might result in such damage, unless they provided a *quid pro quo.* No doubt a business may be property in a broad sense of the word, and property of great value. It may be assumed for the purposes of this case that there might be such a taking of it as required compensation. But a business is less tangible in nature and more uncertain in its vicissitudes than the rights which the Constitution undertakes absolutely to protect. It seems to us, in like manner, that the diminution of its value is a vaguer injury than the taking or appropriation with which the Constitution deals. A business might be destroyed by the construction of a more popular street into which travel was diverted, as well as by competition, but there would be as little claim in the one case as in the other. See *Smith v. Boston,* 7 Cush., 254; *Stanwood v. Malden,* 157 Mass.; 17. It seems to us that the case stands no differently when the business is destroyed by taking the land on which it was carried on, except so far as it may have enhanced the value of the land. See *New York, New Haven & Hartford Railroad v. Blacker,* 178 Mass., 386."

And in *State v. Lumber Co.,* 199 N. C., p. 202, 154 S. E., 72, it was said: "Neither is it controverted that, unless sanctioned by statute, loss of profits from a business conducted on the property or in connection therewith, is not to be included in the award for the taking," citing *Mitchell v. U. S.,* 267 U. S., 341, and *Joslin Mfg. Co. v. Providence,* 262 U. S., 668.

The case of *Jones v. Call,* 96 N. C., 337, 2 S. E., 647, is not directly in point, as it involves no taking of property by eminent domain, still it may be cited as illustrative of one of the reasons for the rule. There, the plaintiff's business of manufacturing and selling certain patented machines was interfered with and stopped by the alleged wrong of the defendant. At the time of the interference, plaintiff's profit derived from such manufacture and sale was $6,000 per annum. It was held that an assessment which awarded to plaintiff this profit from the time of the interference to the time of the making of the referee's report was erroneous; its basis being, of necessity, partly speculative, and there being no certainty that the business would have continued to yield such profit. See, also, *Coles v. Lumber Co.,* 150 N. C., 183, 63 S. E., 736.

Again, the defendant seasonably requested the court to instruct the jury that any loss occasioned by the order of quarantine, issued by the Health Department, should not be confused with that arising out of the alleged nuisance, for which the plaintiffs sue. This was declined. On the contrary, attention was directed to the evidence tending to show that plaintiffs' "dairy business was stopped, virtually destroyed," by the order of quarantine. It seems inescapable that the value of plaintiffs' dairy business was made an element of recoverable damages in the case.

Health ordinances are governmental in character and function. They are grounded in the police power. A municipality, therefore, is not liable in damages to the citizen who sustains an injury, or suffers a loss, by reason of their valid enactment and enforcement. *Mack v. Charlotte,* 181 N. C., 383, 107 S. E., 244; *McIlhenney v. Wilmington,* 127 N. C., 146, 37 S. E., 187; *Prichard v. Morganton,* 126 N. C., 908, 36 S. E., 353; *Moffitt v. Asheville,* 103 N. C., 237, 9 S. E., 695; *Annotation,* 12 A. L. R., 247.

Of course, if plaintiffs' farm has been rendered unfit for dairying purposes, or any other to which it is adaptable, by the construction and maintenance of defendant's sewage disposal plant, as plaintiffs allege, this diminished value of the land, presupposing liability, constitutes a proper item for inclusion in the award, but a business *per se* is not "property" within the meaning of the law requiring compensation for its taking under the power of eminent domain. *S. v. Lumber Co., supra; Gray v. High Point, supra; Power Co. v. Hayes,* 193 N. C., 104, 136 S. E., 353.

If this were not so, one engaged in a business rendered unlawful by some prohibitory act, *e.g.*, prohibition law, health or sanitation ordinance, might, with propriety, ask to be compensated for the loss of his business by reason of the passage of such law or ordinance. It is not thought that this position would be regarded as tenable. *Salus populi suprema lex. S. v. Hay,* 126 N. C., 999, 35 S. E., 459. *Privatum incommodum publico bono pensatur. Daniels v. Homer,* 139 N. C., 219, 51 S. E., 992. A careful perusal of the record leaves us with the impression that the loss of plaintiffs' dairy business was one of the principal matters considered by the jury.

There are other exceptions appearing on the record worthy of consideration, but as they may not arise on another hearing, present rulings thereon, which could only be anticipatory, and perhaps supererogatory, are pretermitted.

For the errors, as indicated, a new trial must be awarded. It is so ordered.

New trial.