COLONIAL PIPELINE COMPANY v. H. MICHAEL WEAVER AND WIFE, SONJA R. WEAVER

No. 211A83

(Filed 10 January 1984)

1. **Eminent Domain § 6.9— purchase price of property—failure to show arm's length transaction—impeachment purpose satisfied**

    In an action to condemn a pipeline easement, cross-examination of the landowner as to the purchase price he paid his former business partner for a one-half undivided interest in the property eight years earlier upon dissolution of their development corporation was not competent for the purpose of determining the market value of the property at the time of the taking since petitioner failed to show that the prior sale was an arm's length transaction in the open market. Furthermore, when the landowner on two occasions testified that he did not recall the prior purchase price, the impeachment purpose of the cross-examination was satisfied with respect to that transaction, and further cross-examination concerning the prior purchase price was properly excluded for impeachment purposes.

2. **Eminent Domain § 6.9— cross-examination of value witness—knowledge of existing easements—court's remark not prejudicial—prior temporary construction easements**

    While cross-examination of respondents' expert value witness concerning his knowledge of previously existing rights-of-way on respondents' property was relevant to a determination of the market value of the property prior to the taking, petitioner was not prejudiced by the trial judge's remark during such cross-examination that he didn't "believe that is relevant" where the remark can be construed as referring only to the witness's knowledge of the exact dimensions of the existing rights-of-way rather than to the entire line of questioning. Furthermore, the trial judge properly excluded a question con-

cerning the prior existence of temporary construction easements on the property since such easements would not be relevant in determining the market value of the property before the present taking.

**3. Eminent Domain § 7.8— condemnation of pipeline easement—instructions on effect of temporary construction easements**

In an action to condemn a permanent pipeline easement and temporary construction easements, the trial court erred in failing properly to instruct the jury as to the nature of the temporary construction easements and what consideration should be given to them in determining the issue of damages.

APPEAL by respondents from the decision of the Court of Appeals, reported at 61 N.C. App. 200, 300 S.E. 2d 464 (1983), ordering a new trial. Judgment entered on 16 October 1981 by *Wood, J.,* in Superior Court, GUILFORD County. Heard in the Supreme Court 14 September 1983.

This is a condemnation proceeding instituted by Colonial Pipeline Company on 21 February 1979. Petitioner, a Delaware corporation lawfully domesticated in North Carolina, transports petroleum products and other fluid substances into and through this state as a common carrier. When it became necessary to construct an additional pipeline running from Colonial Pipeline Company's Greensboro, North Carolina, station northeasterly to its Richmond, Virginia, station, petitioner sought to acquire a permanent right-of-way across a tract of land owned by the respondents, H. Michael Weaver and his wife, Sonja R. Weaver. The land in question contains approximately 348 acres located in Friendship Township, Guilford County, North Carolina. The permanent right-of-way condemned contains 3.615 acres. It consists of a strip of land thirty feet in width through the southern portion of respondents' property and fifty feet in width through the northern portion of respondents' property. In addition, petitioner sought the condemnation of temporary construction easements, containing 5.131 acres, running parallel to and adjacent to the permanent right-of-way.

Commissioners were appointed pursuant to statute and assessed respondents damages in the sum of $51,245. Both parties filed exceptions to this report and appealed from the order of confirmation to the superior court.

In October 1981 a jury trial was had upon the single issue of the amount of just compensation respondents were entitled to for

the taking of the right-of-way and the rights described in the petition. The jury returned a verdict in the amount of $80,000. Petitioner's motions to set the verdict aside and to grant a new trial were denied.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Joseph W. Moss and Larry I. Moore III for petitioner appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by James T. Williams, Jr. and S. Leigh Rodenbough IV for respondent appellants.*

MARTIN, Justice.

The Court of Appeals remanded this case for a new trial based upon three errors in evidentiary rulings by the trial court having to do with the petitioner's cross-examination of respondent Weaver and his expert witness, James E. Flynt, Jr., regarding the value of the property in question. Pursuant to Rules 14, 16, and 28 of the North Carolina Rules of Appellate Procedure, the petitioner included in its brief to this Court additional questions for review. Upon careful consideration of all the issues, we modify and affirm the decision of the Court of Appeals.

[1] Petitioner's first assignment of error relates to the trial court's exclusion of evidence of the previous purchase price respondent Weaver allegedly paid for a one-half undivided interest in the subject property. On direct examination, Mr. Weaver testified that in his opinion the value of his property immediately before the taking by Colonial Pipeline was $4,500,000. On cross-examination, Weaver was then questioned at length about his acquisition of the subject property. The relevant portion of this cross-examination follows:

CROSS EXAMINATION — Mr. Moss:

Q. Mr. Weaver, I believe you testified that you, and I understood you to say, "I acquired the property in 1962," is that correct?

A. Yes, sir.

Q. You didn't acquire it in your own name, did you?

A. No, sir, I acquired it through a corporation, W. T. Development Company.

. . . .

Q. And you and Mr. Taylor bought this property together under the name of W. T. Corporation, is that what it was?

A. Yes.

Q. At some time later than that, I believe you bought Mr. Taylor's interest from him, did you not?

A. I did.

Q. That was in 1971, wasn't it, Mr. Weaver?

A. Correct.

. . . .

Q. Mr. Weaver, on September 21, 1971, did not W. T. Development Company, Incorporated, convey to John R. Taylor and H. Michael Weaver the property in question by deed recorded in Deed Book 2560, Page 294?

A. I would say so.

Q. And then on September 3, 1971, did not John R. Taylor and wife, Betsy D. Taylor, convey to H. Michael Weaver the same property, one-half undivided interest, by deed recorded in Book 2560 at Page 175?

A. Yes.

Q. And did you or did you not pay Mr. Taylor for his one-half interest in the property, Mr. Weaver?

A. I did pay him.

Q. And did you pay him full value for his one-half interest in the property?

A. Yes.

Q. And did you pay him—do you recall how much you paid him?

A. No, I do not.

Q. Would the tax stamps which were placed on that particular deed have reflected the actual purchase price which was paid for that property, Mr. Weaver?

A. I would think so—at least that much, maybe more.

Q. Did I ask you if you recalled how much you paid for the land?

A. You did ask me, and I don't remember. And, of course, I don't remember—I must have bought the land from him but we dissolved W. T., and I acquired his interest, basically a simultaneous transaction.

Q. Mr. Weaver, I hand you a copy of a document and ask you if you can identify that particular document, please, sir? . . .

A. Yes, I do.

Q. And does that particular document reflect a certain amount—does that document contain a Guilford County or State of North Carolina tax stamp on it, Mr. Weaver?

A. Yes, it does.

THE COURT: What is the document?

MR. MOSS:

Q. What is the document, Mr. Weaver?

A. The document is a deed dated September 3, 1971, from John R. Taylor and wife, Betsy D. Taylor, to H. Michael Weaver.

. . . .

Q. Can you ascertain from looking at that tax stamp what it says?

A. No, I cannot. It is not clear.

Q. Didn't you pay Mr. Taylor $160,000.00 for his half interest in—

MR. WILLIAMS: Objection.

THE COURT: Sustained.

MR. WILLIAMS: We move to strike the question.

THE COURT: Ladies and gentlemen of the jury, you strike what the attorney said and the question that he just phrased

Colonial Pipeline Co. v. Weaver

from your mind. Do not consider that. Whatever was paid for this property in 1971 would not be relevant in this case.

Petitioner argues that the evidence of the 1971 purchase price was admissible for two purposes: (1) as substantive evidence of the fair market value at the time the property was taken; (2) for impeachment purposes to challenge the accuracy of Mr. Weaver's opinion of the fair market value of the property, as well as to rebut previously submitted evidence concerning the sales price of right-of-way interests in the property conveyed in 1963 and 1964.

The Court of Appeals upheld the trial court's exclusion of the evidence for substantive purposes but held that the evidence was nevertheless competent for purposes of impeachment to test the accuracy of Mr. Weaver's opinion as to the value of the property. We disagree with this second conclusion. Evidence of the purchase price in this particular 1971 transaction was improper for impeachment as well as valuation purposes.

First, we discuss the competency of the testimony as substantive evidence. In a case such as this, where only a part of a tract is taken, the measure of damages for said taking is the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking. *Gallimore v. Highway Comm.,* 241 N.C. 350, 85 S.E. 2d 392 (1955).

> The market value of property is the yardstick by which compensation for the taking of land or any interest therein is to be measured and market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all of the capabilities of the property, and all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner.

*Light Co. v. Moss,* 220 N.C. 200, 205, 17 S.E. 2d 10, 13 (1941). The same factors are to be considered as in the sale of property in the open market between private parties where both the seller and

buyer bargain for the sale and purchase of the property. *Id.* at 212, 17 S.E. 2d at 18 (Clarkson, J., concurring).

It follows that the basis for a fair market value determination is an arm's length transaction, negotiated between parties, each acting in his or her own self interest. We find this crucial concept to be determinative of the questions concerning respondents' testimony above.

In determining the admissibility of evidence of the purchase price of property, the following is applicable:

> " 'It is accepted law that when land is taken in the exercise of eminent domain, it is competent as evidence of market value to show the price at which it was bought if the sale was voluntary and not too remote in point of time.' *Palmer v. Highway Commission,* 195 N.C. 1, 141 S.E. 338. When land is taken by condemnation evidence of its value within a reasonable time before the taking is competent on the question of its value at the time of the taking. But such evidence must relate to its value sufficiently near the time of taking as to have a reasonable tendency to show its value at the time of its taking. The reasonableness of the time is dependent upon the nature of the property, its location, and the surrounding circumstances, the criterion being whether the evidence fairly points to the value of the property at the time in question. *Highway Commission v. Hartley,* 218 N.C. 438, 11 S.E. 2d 314."

> In determining whether such evidence is admissible, the inquiry is whether, under all the circumstances, the purchase price fairly points to the value of the property at the time of the taking.

*Shopping Center v. Highway Commission,* 265 N.C. 209, 211-12, 143 S.E. 2d 244, 245-46 (1965) (citations omitted).

Thus, in cases involving questions of the admissibility of the purchase price of the same or similar property, the law's insistence on an arm's length transaction as the initial basis for any determination of relevance is and has been clear.

Respondent Weaver was asked on cross-examination about his purchase of the remaining one-half undivided interest in the

subject property from his former business partner in 1971. It is true that the expiration of eight years from the time of the acquisition of the property until the present condemnation is significant: Respondent presented evidence tending to demonstrate changes in the northwest Greensboro vicinity of the property which might have affected its value and in addition testified that during his term of ownership he had made noteworthy improvements to the property by thinning, treating, and planting trees. This Court, however, need not proceed as far as this second requirement to determine whether evidence of the purchase price was relevant to an inquiry as to the property's market value at the time it was condemned. The determinative factor on this issue is the more basic initial requirement that the prior sale be an arm's length transaction on the open market. This, of course, goes to the nature of the sale as a "voluntary" transaction. Upon the objection being lodged, plaintiff failed to make a showing that the prior sale was an arm's length transaction in the open market. To the contrary, the evidence indicated that the prior sale was only one of several considerations between Weaver and Taylor upon the dissolution of their corporation. While specific details of the negotiations between the respondent and Mr. Taylor are not in the record, we do have respondent's account of the purchase: "[W]e dissolved W. T., and I acquired his interest, basically a simultaneous transaction."

The evidence was not competent for substantive purposes.

The record fails to disclose that petitioner offered the challenged evidence solely for the purpose of impeachment. The issue was raised for the first time in the Court of Appeals. Respondents made a general objection to the testimony. "[W]here a general objection is sustained, it seems to be sufficient, if there is any purpose for which the evidence would be inadmissible." 1 Brandis on North Carolina Evidence § 27 (1982). *See Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951) (rule apparently approved, although unnecessary to decide the case). *See also* 4 C.J.S. *Appeal and Error* § 291 (1957). We note, therefore, that petitioner's impeachment argument was not properly before the Court of Appeals. Nevertheless, given our decision to remand this case for further proceedings, we briefly address the issue.

The Court of Appeals in holding that the evidence was competent for impeachment purposes relied upon *Palmer v. Highway*

*Commission,* 195 N.C. 1, 141 S.E. 338 (1928). In *Palmer,* evidence of a prior sales price was admitted for both substantive and impeachment purposes. The Court did not discuss, nor does the evidence disclose, the nature of the prior sale—whether it was an arm's length transaction in the open market. In addition to the preceding discussion on the lack of a proper foundation concerning the prior sale, we find the reasoning in *Power Co. v. Winebarger,* 300 N.C. 57, 265 S.E. 2d 227 (1980), to be applicable under the facts of the present case:

> (3) Where a witness has been offered to testify to the value of the property directly in issue, the scope of that witness' *knowledge* of the values and sales prices of dissimilar properties in the area may be cross-examined for the limited purposes of impeachment to test his credibility and expertise. . . .
>
> (4) Under these limited impeachment circumstances, however, it is improper for the cross-examiner to refer to specific values or prices of noncomparable properties in his questions to the witness. . . . *Moreover, if the witness responds that he does not know or remember the value or price of the property asked about, the impeachment purpose of the cross-examination is satisfied and the inquiry as to that property is exhausted.* . . . If, on the other hand, the witness asserts his knowledge on cross-examination of a particular value or sales price of noncomparable property, he may be asked to state that value or price only when the trial judge determines in his discretion that the impeachment value of a specific answer outweighs the possibility of confusing the jury with collateral issues. In such a rare case, however, the cross-examiner must be prepared to take the witness' answer as given.

300 N.C. at 66, 265 S.E. 2d at 232-33 (citations omitted) (emphasis added).

Respondent Weaver on two occasions testified that he did not recall the 1971 purchase price. He also stated that he could not determine it from the tax stamps on the deed. At that point the impeachment purpose of the cross-examination was satisfied with respect to that transaction under the rule in *Winebarger.*

The trial court properly excluded the testimony for impeachment purposes.

[2]   In a related assignment of error, petitioner contends that its cross-examination of respondents' sole expert value witness, Mr. Flynt, concerning his knowledge of previously existing rights-of-way on respondents' property was prejudicially limited by the trial court. The relevant portion of trial testimony follows:

Q. Do you know the width of the Colonial Pipeline right-of-way that was in existence there prior to February 21, 1979?

A. It is approximately fifty feet.

Q. Approximately? You don't know the dimensions of the right-of-way?

THE COURT: Are you talking about Colonial?

MR. MOSS: The original Colonial, the 1963 Colonial right-of-way that was in existence at the time he made his appraisal.

THE COURT: I don't believe that is relevant.

Q. Did you know or did you note at that time the width of the Plantation Pipeline right-of-way across the property?

A. Approximately.

Q. You don't know exactly?

A. Fifty feet, give or take five feet. It has the same effect on the property.

Q. Do you know whether or not Colonial Pipeline Company and/or Plantation Pipeline Company acquired a temporary working easement at the time they acquired their rights to the pipeline rights-of-way which were in existence for 1963 and 1964?

MR. WILLIAMS: Objection, your Honor.

THE COURT: Sustained.

Petitioner claimed, and the Court of Appeals so found, that the trial court committed prejudicial error by precluding cross-examination of this witness's knowledge of previously existing rights-of-way and their effect on the property. Secondly, and

perhaps more damaging to petitioner, it argues, were the trial court's interruption of the cross-examination and subsequent comment, "I don't believe that is relevant." Petitioner argues that this remark was a direct expression of opinion by the trial court as to the weight and importance of the evidence. We do not agree.

It is axiomatic, of course, that it is the lawful right of every litigant to expect utter impartiality and neutrality in the judge who tries his case and to have as well an equally unbiased and properly instructed jury. This right can neither be denied nor abridged. *Upchurch v. Funeral Home,* 263 N.C. 560, 140 S.E. 2d 17 (1965). *See* N.C.R. Civ. P. 51(a). Any remark of the presiding judge made in the presence of the jury which has a tendency to prejudice the jury against the unsuccessful party may be grounds for a new trial. *Homes, Inc. v. Holt,* 266 N.C. 467, 146 S.E. 2d 434 (1966). *See* 12 Strong's N.C. Index 3d *Trial* § 10 (1978).

However, remarks made by the trial court in the jury's presence do not always constitute prejudicial error. Judges are not merely mute observers of the legal drama before them. They are the most important participants in the search for truth through trial by jury. 1 Brandis on North Carolina Evidence § 37 (1982). *See also* 75 Am. Jur. 2d *Trial* § 87 (1974). Because the trial judge occupies an exalted station, jurors entertain great respect for his opinion and can be easily influenced by a suggestion coming from him. In cases such as this, therefore, where it must be determined whether a party's right to a fair trial has been impaired by remarks made by the trial judge, the probable effect upon the jury and not the motive of the judge, is determinative. *State v. Smith,* 240 N.C. 99, 81 S.E. 2d 263 (1954). In applying this test, the remark of the judge must be considered in the light of the circumstances under which it was made. *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951). This is so because "a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 62 L.Ed. 372, 376 (1918). It is incumbent upon the appellant to show that the trial court's expression of opinion was in fact prejudicial. *Kanoy v. Hinshaw,* 273 N.C. 418, 160 S.E. 2d 296 (1968).

We do not disagree with the Court of Appeals holding that the line of questioning on cross-examination regarding the nature of the two prior easements was relevant to a determination of the market value of the property prior to the taking. However, petitioner has failed to show actual prejudice by the statement or ruling of the trial judge. Only one objection was made by respondents. The trial court properly sustained this objection because the question referred to the prior existence of *temporary* construction easements in 1963 and 1964. As these construction easements were temporary, they would not be relevant in determining the fair market value of the subject property immediately before the present condemnation.

All other questions asked by petitioner's counsel in this regard were answered. If there was a failure to further develop this cross-examination, it cannot be ascribed to the court's actions. There was ample evidence by respondents and the witness Flynt concerning the preexisting rights-of-way.

We further note, with regard to the comment itself, that the respondents' interpretation of the judge's words is quite plausible: "Viewed in context, the trial court's remark was not one directed to the entire line of questioning, but only to the relevancy of Mr. Flynt's knowledge of the exact, as opposed to the approximate, dimensions of the existing rights-of-way across the Respondent's property." More than a bare possibility of prejudice from a remark of the judge is required to overturn a verdict or a judgment. *State v. Carter, supra,* 233 N.C. 581, 65 S.E. 2d 9. Where a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial. *See* 88 C.J.S. *Trial* § 49 (1955). Petitioner has failed to show prejudice from the remark by the trial judge.

[3] We find no prejudicial error in the evidentiary rulings of the trial court. We do find, however, that the failure of the trial court to properly instruct the jury concerning the nature of the temporary construction easements requires a new trial.

The trial court initially charged the jury:

In this case, the measure of damages for the taking of an easement or right-of-way for a petroleum pipeline is the difference between the fair market value of the tract as a

whole—that is, the tract of 348 plus or minus acres as described in the deed as stipulated to by the parties—as a whole before the easement or right-of-way was taken and its impaired value directly resulting to the land from its use and the manner and to the extent and in the respect to the uses for which the easement was acquired. In other words, it is the difference between the fair market value of the property free of the easement and the fair market value of the property subject to the easement in this case on February 21, 1979, the date of the taking.

The record shows that at the conclusion of its charge and outside of the hearing of the jury, when the trial court gave counsel for both parties an opportunity to object to any portion of the charge or an omission therefrom, the following exchange took place:

MR. WILLIAMS: Just one matter, nothing was said in the charge at all about the temporary work space.

THE COURT: If you want to take an exception to that—I don't remember ever saying anything about the temporary work space. I didn't go into the facts of the case.

MR. WILLIAMS: But in the petition there is something of five point acres for a temporary taking.

MR. LEONARD: I don't feel that it is at all clear to the jury when he is talking about completed taking.

THE COURT: It is still the difference in value.

MR. LEONARD: But what I'm concerned about is whether the jury understands that they have a right to consider in that the temporary work space and what was done in connection with the temporary work space. And that was definitely part of it.

THE COURT: That all comes back to this, and you all have contended strongly about the cutting of the trees in the temporary work space and the value of that, and it all comes back down to the difference in value before the taking and after the taking.

MR. LEONARD: I agree with you about that but—

Colonial Pipeline Co. v. Weaver

THE COURT: If you will submit an instruction on that, I will give it or I will consider it.

MR. WILLIAMS: I think the instructions that I gave you applied equally to the permanent and temporary taking in the case.

THE COURT: I applied it to all the taking immediately prior and immediately after, and they are to consider everything. If there is no objection, I will just remind them that these instructions apply.

MR. MOSS: I will object to that. You told them under the Pattern Jury Instructions that they are entitled to consider it in the completed state. In my opinion you would be committing error to point that out as a separate item of damage, separate and apart.

The court then instructed the jury over petitioner's objection: "Now, members of the jury, when the Court referred to the right-of-way or easement, I was referring to both the temporary and permanent rights-of-way or easement when I used those terms."

Petitioner argues that this supplemental instruction of the trial court brought the temporary construction easements to the jury's attention, erroneously equated them with the permanent easement, and was therefore tantamount to a command to the jurors to compensate respondents for the temporary easements on the same basis as it would compensate respondents for the permanent easement. Petitioner further maintains that the supplemental instruction, taken with the initial charge to the jury, conveys the false impression that 5.131 acres of the respondents' land was still encumbered by the temporary easements, so that the landowners' use of these acres continued to be restricted.

Respondents contend that the petitioner's attorney had emphasized to the jury in cross-examining Mr. Flynt that the easements taken for temporary work space terminated at the completion of construction and all property taken for that purpose then reverted back to respondents. The jurors, therefore, "must have understood" that the damages they awarded the respondents for the temporary work spaces were limited to the actual damages to respondents' property occurring during and oc-

casioned by the course of construction. Furthermore, argue respondents, the trial court could have "assumed" the jurors would use the "clearly distinguishable and commonly understood" meanings of the words "permanent" and "temporary" in complying with the judge's instructions.

The trial court erred in failing to properly instruct the jury as to the nature of the temporary construction easements and what consideration should be given to them in determining the issue of damages. Where it is necessary for a condemnor to acquire a temporary construction easement in connection with a condemnation proceeding, the jury should be instructed substantially as follows:

> This temporary construction easement is necessary for use by the condemnor in constructing the [*pipeline*]. After the construction is completed, the area within this easement will revert to the landowner and this easement will terminate, so you will not consider this area as a permanent taking by the condemnor in determining your verdict, but you will consider any damages to the landowner caused by the condemnor's use of the construction easement. These *may* include:
>
>    a. Cost of removal of landowner's improvements from the construction easement that are paid by landowner;
>
>    b. Fair rental value of easement area for time used by condemnor;
>
>    c. Cost of constructing alternate entrance to property;
>
>    d. Changes made in area resulting from use of easement that affect value of area in easement or value of the remaining property of landowner;
>
>    e. Removal of trees, crops, improvements from area in easement by condemnor;
>
>    f. Length of time easement used by condemnor.
>
> Whatever you determine this to be will be included in your verdict in the case.

The evidence may support additional elements of damages flowing from the use of the temporary construction easements. The

court should only instruct the jury on the elements of damages that are supported by the evidence, and the jury should be instructed that the burden of proof is upon the landowner.

For the failure of the trial judge to properly instruct the jury with respect to the temporary construction easements, a substantive part of the charge, there must be a new trial.

The decision of the Court of Appeals is

Modified and affirmed.