GREENE v. CARPENTER, WILSON, CANNON AND BLAIR

[119 N.C. App. 415 (1995)]

*Id.*

———

JANICE L. GREENE, EXECUTRIX OF THE ESTATE OF KENNETH R. GREENE, AND JANICE GREENE, INDIVIDUALLY v. CARPENTER, WILSON, CANNON AND BLAIR, P.A., A PROFESSIONAL CORPORATION, AND BRUCE L. CANNON, INDIVIDUALLY

No. COA94-879

(Filed 5 July 1995)

**Attorneys at Law § 49 (NCI4th)— malpractice—damages—sufficiency of evidence**

A motor speedway's purchase price ($1 million) was competent evidence of its fair market value in plaintiff sellers' legal mal-

practice action against defendant attorney based on his failure to explain the legal effect of a $500,000 purchase money note and deed of trust which plaintiffs accepted as part of the purchase price and which they agreed to subordinate to a bank's deed of trust, so that plaintiffs recovered only $4,120 on their note when the bank foreclosed its deed of trust. Therefore, the trial court erred by directing a verdict for defendant attorney and his law firm on the ground that plaintiff failed to produce evidence of damages.

**Am Jur 2d, Attorneys at Law § 226.**

**Measure and elements of damages recoverable for attorney's negligence in preparing or conducting litigation—Twentieth Century cases. 90 ALR4th 1033.**

Appeal by plaintiffs from judgment signed 18 April 1994 by Judge Charles C. Lamm, Jr., in Caldwell County Superior Court. Heard in the Court of Appeals 9 May 1995.

This case involves a claim of legal malpractice against defendant, Bruce Cannon, and his law firm. Plaintiff, Janice L. Greene, has filed suit individually and as the executrix of her late husband's estate, Kenneth R. Greene.

Plaintiff and her late husband, Kenneth R. Greene, (hereinafter referred to collectively as plaintiffs) were married on 3 April 1982. In 1985, plaintiffs purchased a 32.82 acre tract of land. They developed and operated a speedway known as the Tri-County Speedway from 1985 to 1988. In 1988, plaintiffs started negotiations with Mike Lackey regarding the sale of the speedway. Plaintiffs retained defendant, attorney Bruce Cannon, to prepare a "Contract to Purchase and Sell" the speedway to Lackey and the Lackey Grading Co. On 18 November 1988, a contract to sell at a price of $1,205,000 was executed. After allowing certain cash payments, trades and the assumption of existing debt, Lackey owed plaintiffs-sellers $500,000 which was to be secured by "a second mortgage on the property . . ., payable within ten years at ten percent interest."

Sometime later, Lackey informed plaintiffs that he was having financial difficulty. He suggested that Dean and Greg Wilkie could be possible investors. Plaintiffs discussed this possibility with defendant Cannon who advised plaintiffs that adding the Wilkies as additional investors would increase their chances of being fully paid on the

Note. In March 1989, plaintiffs and Lackey executed a modification to the original agreement which allowed other investors (the Wilkies) into the deal. The Modification changed the original agreement so that plaintiffs' $500,000 deed of trust would be subordinated to any financial institution that would hold a first mortgage up to $400,000. Defendant advised plaintiffs that if they took back a $500,000 Note on the sale and subordinated their debt to the $400,000 mortgage and note, the Wilkies, who had formed a partnership, would be personally liable on the $500,000 Note.

On 11 April 1989, plaintiffs sold the Speedway to the Wilkies' partnership, Raceway Partners, for $1,000,000. On that day, Raceway Partners executed to plaintiffs a Promissory Note for $500,000 with interest at 10% per annum at an annual installment of $50,000 until paid. Recited at the bottom of the Note was the language, "This Note is given as purchase money and is secured by a Deed of Trust of even date recorded in Caldwell County Registry." Plaintiffs were concerned that only Lackey signed the note, but defendant assured them that all the partners of Raceway Partners were "jointly and wholly liable" on the Note. On 20 July 1990, Wachovia Bank loaned $400,000 to Raceway Partners; plaintiffs as agreed, subordinated their Deed of Trust to Wachovia. On 28 December 1990, Wachovia assigned its Deed of Trust to Francis Motor Speedway. Francis Motor Speedway foreclosed on Wachovia's $400,000 Deed of Trust. After the foreclosure sale and after the balance on the $400,000 Note had been paid, only $4,120.08 remained to cover plaintiffs' $500,000 Deed of Trust. Plaintiffs did not bid at the foreclosure sale since they had no money to bid on the property.

When the first installment on the Note became due on 11 April 1990, plaintiffs attempted to contact defendant, but defendant never returned plaintiffs' calls. When plaintiff Janice Greene contacted Gregg Wilkie, he informed her that "he didn't owe her a dime." When plaintiffs filed suit against Raceway Partners, their action was dismissed. Plaintiffs contend that defendant never used the words "purchase money note" in discussing their options for selling the property, nor did he explain the legal effect of a "Purchase Money Deed of Trust." Defendant also never informed plaintiffs about their rights and remedies against the buyer upon default of the Note. The individual partners of Raceway Partners were all financially solvent at the time of the transaction.

GREENE v. CARPENTER, WILSON, CANNON AND BLAIR

[119 N.C. App. 415 (1995)]

Plaintiffs filed suit against defendants for negligence in failing to explain to plaintiffs the legal effect of a "Purchase Money Note and Deed of Trust." At trial, after plaintiffs' evidence, the trial court granted defendants' motion for directed verdict because it concluded that plaintiffs had failed to properly prove their damages.

Plaintiffs appeal.

*Eisele & Ashburn, P.A., by Douglas G. Eisele, for plaintiff-appellants.*

*Paul I. Klein for defendant-appellees.*

EAGLES, Judge.

Plaintiffs contend that the trial court erred in granting defendants' motion for directed verdict. After careful review of the record and briefs, we reverse.

I.

At the close of plaintiffs' evidence, defendants filed a motion for directed verdict pursuant to G.S. 1A-1, Rule 50. On a defendant's motion for directed verdict, the trial court must determine whether the evidence, when considered in the light most favorable to the plaintiff, is sufficient to take the case to the jury. *Southern Bell Tel. & Tel. Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990); G.S. 1A-1, Rule 50 (a). On appeal, the scope of review is limited to those grounds asserted by the moving party before the trial court. *Id.*

Defendants moved for directed verdict on the grounds that plaintiff had failed to produce competent evidence of proximate cause and damages. The trial court granted defendants' motion on the grounds that "plaintiffs have failed to present evidence from which a jury can reasonably determine without speculating the amount of the damages, if negligence or proximate cause were found to exist."

The proper measure of damages in a legal malpractice action is the difference between the plaintiff's actual pecuniary position and what plaintiff's pecuniary position should have been if the attorney's malpractice had not occurred. *Smith v. Childs*, 112 N.C. App. 672, 685, 437 S.E.2d 500 (1993). Plaintiffs contend that they sold the Tri-County Speedway to Raceway partners for one million dollars and that as part of the purchase price they took a $500,000 Promissory Note and Deed of Trust which they agreed to subordinate to Wachovia's $400,000 Deed of Trust. When Francis Motor Speedway

foreclosed on Wachovia's $400,000 Deed of Trust, plaintiffs only recovered $4,120.08 on their $500,000 Note and Deed of Trust. In granting defendants' motion to dismiss, the trial court held that plaintiffs had presented no evidence of the fair market value of the Speedway on the date of the sale.

> The market value of property is the yardstick by which compensation for the taking of land or any interest therein is to be measured and market value of property is the price which it will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. In estimating its value all of the capabilities of the property, and all of the uses to which it may be applied, or for which it is adapted, which affect its value in the market are to be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner.

*Nantahala Power & Light Co. v. Moss*, 220 N.C. 200, 205, 17 S.E.2d 10, 13 (1941). Although *Moss* involved the determination of the fair market value of land in an eminent domain proceeding, the same factors are to be considered in the sale of property in the open market where both the buyer and seller bargain at arm's length. *Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 98-99, 310 S.E.2d 338, 341 (1984).

Here, plaintiffs sold the Speedway to Raceway Partners for one million dollars ($1,000,000). As part of the agreement, Raceway Partners executed a $500,000 Promissory Note to plaintiffs for the remainder of the purchase price. The purchase price of property is competent evidence of its fair market value if the sale was voluntary and not too remote in time. *Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 99, 310 S.E.2d 338, 342 (1984). Plaintiffs have presented sufficient evidence of the purchase price of the Speedway by Raceway Partners. Accordingly, the trial court erred in granting defendants' motion to dismiss. The cause is reversed and remanded for trial.

Reversed and remanded

Judges WYNN and MARTIN, MARK D., concur.