IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-689

Filed: 7 August 2018

Burke County, No. 11 CVS 785

DEPARTMENT OF TRANSPORTATION, Plaintiff,

v.

JAY BUTMATAJI, LLC; BYRD, BYRD, ERVIN, MCMAHON & DENTON, P.A., Trustee; MUKTI, INC., BB&T COLLATERAL SERVICE CORPORATION, Trustee, and BRANCH BANKING AND TRUST COMPANY, Defendants.

Appeal by defendant Jay Butmataji LLC from judgment entered 10 October 2016 by Judge W. Robert Bell in Superior Court, Burke County. Heard in the Court of Appeals 11 January 2018.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kevin G. Mahoney, for the State.*
>
> *Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Forrest A. Ferrell and Andrew J. Howell, for defendant-appellant Jay Butmataji LLC.*

STROUD, Judge.

Defendant appeals the trial court's judgment awarding him $150,000 as just compensation for the taking of his property by the Department of Transportation. Because the trial court did not abuse its discretion in excluding portions of defendant's appraiser's testimony and appraisal report which valued the taking of a

temporary construction easement assuming conditions during construction which did not exist, we affirm.

## I.    Background

On 10 May 2011, plaintiff Department of Transportation ("DOT") instituted this action against defendant landowner Jay Butmataji LLC, trustees, and Branch Banking and Trust Company.[1]  DOT had condemned and appropriated a portion of defendant's property in Burke County upon which it operated a motel.  DOT took 0.184 acres of defendant's 3.573 acres of property.  DOT described the taking as a temporary construction easement ("TCE") to widen a highway.[2]  Defendant Butmataji answered DOT's complaint and requested a jury trial to determine just compensation for the taking.

Before the trial, DOT made a motion in limine requesting the trial court

> to instruct all parties, their counsel, and witnesses not to
> mention state, or intimate any of the matters listed below
> by statement, question, or argument in the presence of the
> jury or the jury panel without first approaching the Court
> of the hearing of the jury and securing a ruling regarding
> the same[.]

In its motion, DOT listed several matters subject to the motion in limine.  Before trial began, on 9 August 2016, the trial court considered the motion in limine and the

---

[1] Only defendant Jay Butmataji LLC appeals so it is the singular "defendant" we refer to in this case.

[2] DOT also took an easement in perpetuity for drainage, which is not at issue in this case.

parties addressed at length their contentions about the appropriate evidence for the jury to consider.

Defendant owned and operated a motel on the property and contended ingress and egress to his business was limited by the TCE during the construction of the road. The State argued that the appraisal prepared by Mr. Damon Bidencope, defendant's expert witness, included valuation of loss of income to the motel and elements of damages not supported by the actual conditions of the property during construction. The State argued, "[C]ases are very clear, that you are not allowed loss of rent. It's only the rent of that particular piece of the easement, not loss of rent from your business, even though this is a motel, Your Honor. You're just not allowed. It's very, very clear." Defendant's attorney countered,

> [W]e're entitled to present evidence through Mr. Bidencope and through our witnesses of the effect that this temporary construction easement had on the remainder of the property, because that's what the law says we can do.
>      . . . .
>      So we contend we're wholly entitled to put on that evidence and that Mr. Bidencope's appraisal addresses that in a[n] accurate manner. Now, if they want to take Mr. Bidenquote -- cope on voir dire and address it at that time, that's fine, Your Honor. But we wholly don't think you should exclude it at this time in any limited phase.

Mr. Bidencope then testified at length on voir dire.

The trial court granted the State's motion in limine in part and excluded the portion of Mr. Bidencope's appraisal entitled "Building Rent Lost During TCE[,]"

approximately two to three pages of the 91 page appraisal.[3]  The trial court later

clarified its ruling for defendant as follows:  "He can testify as to the [a]ffect of the

TCE on the remainder of the property, but not as to the taking of the entryway."  The

only question before the jury was the amount of just compensation defendant should

receive.  The jury determined damages of $150,000.00, and the trial court entered

judgment accordingly.  Defendant appeals.

## II.     Exclusion of Testimony

Defendant's only argument on appeal is that "the trial court erred in granting

plaintiff DOT's motion in limine to exclude defendant landowner's expert appraiser

Damon Bidencope's testimony concerning the effects of the temporary construction

easement on the remainder of the defendant landowner's property."  (Original in all

caps.)  "The standard of review for a trial court's ruling on a motion in limine is abuse

of discretion."  *Kearney v. Bolling*, 242 N.C. App. 67, 78, 774 S.E.2d 841, 849 (2015),

*disc. review denied*, ___ N.C. ___, 783 S.E.2d 497 (2016). "A trial court abuses its

discretion where its ruling is manifestly unsupported by reason or is so arbitrary that

it could not have been the result of a reasoned decision."  *City of Charlotte v. Combs*,

---

[3] Defendant's counsel noted that removing this portion of the appraisal would also have an effect on other portions of the appraisal, since "information about the TCE coming across the access and having an effect on the remainder of the property is not only found on pages 85 through 86; it effects an analysis of the other portions of his report and the other damages that he's gone through in his report."  The trial court required Mr. Bidencope to revise his appraisal to remove the excluded portions. Defendant presented a full proffer of evidence of Mr. Bidencope on voir dire and reserved his objection to the modifications to the appraisal report.

216 N.C. App. 258, 262, 719 S.E.2d 59, 63 (2011) (citation and quotation marks omitted).

Defendant's argument focuses on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993) and Rule 702 of the Rules of Evidence regarding an expert witness's qualification to testify; defendant argues "the trial court's ruling was, in effect, a determination that Mr. Bidencope's testimony on the TCE's effect on the remainder of the property was not admissible expert testimony." But defendant misconstrues the trial court's ruling. Mr. Bidencope was not excluded as an expert witness, and he actually testified at length to the jury about the portions of the appraisal not at issue here. Defendant's argument stresses Mr. Bidencope's qualifications and his methodology, but there was really no question as to his qualifications and no question that he used recognized methodologies in valuing the property generally. Defendant's argument assumes that once a witness has been properly qualified as an expert, he may testify to anything within his expertise, but that is simply not the case. Neither experts nor lay witnesses may testify unfettered by the rules of evidence and law applicable to the subject of their testimony. Furthermore, in condemnation cases, the trial court must also consider whether the appraiser's opinion is based upon the correct factual basis and whether the appraisal is based upon any element of damages not considered as a proper consideration for that type of case. *See Department of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 6, 637

S.E.2d 885, 890 (2006) ("An opinion concerning property's fair market value must not rely in material degree on factors that cannot legally be considered.").

From reviewing the transcript of the voir dire, arguments, and colloquy with the trial court, it appears the trial court's concern focused on two aspects of the appraisal. First, Mr. Bidencope valued the "Building Rent Lost During TCE" on the assumption that the actual physical access to the motel was cut off or may be cut off at any time during the 5.1 year period of the construction project. Second, Mr. Bidencope used the loss of income from rental of rooms during the TCE as a portion of his opinion of damages.

Defendant's argument conflates the measure of damages for the permanent partial taking -- the portion of the property which was taken -- with the damages for the temporary construction easement -- damages arising from the actual construction period. For the permanent partial taking, just compensation is based upon the fair market value of the property just before the taking as compared to the value immediately after the taking, assuming the project has been completed as designed. *See Barnes v. Highway Commission.*, 250 N.C. 378, 387, 109 S.E.2d 219, 227 (1959) ("When the property is appropriated by the State Highway Commission for highway purposes, the measure of damages is the difference between the fair market value of the entire tract of land immediately before the taking and the fair market value of what is left immediately after the taking."). In other words, damages are based upon

a legal fiction that the project as planned has been completed immediately after the condemnor acquires the property. *See generally id.* The highest and best use and fair market value of the property in its condition immediately before the taking is compared to the highest and best use and fair market value of the remainder immediately after the taking as if the project were complete. *See generally Barnes*, 250 N.C. 378, 109 S.E.2d 219. This measure of damages skips over the construction period, if any, and any temporary interference with use of the remaining property during construction. The interference with the property during construction is compensable, but the method of valuation is a bit different. *See generally Combs*, 216 N.C. App. at 261-62, 719 S.E.2d at 62-63.

The *only* valuation issue in this case is for the temporary construction easement, so the law regarding valuation for a permanent partial taking does not apply. Damages for the temporary construction easement are based upon the same general principles of valuation as for the permanent taking, but the legal fiction of immediate completion of the project does not apply; this measure of damages considers interference with the property's use *during* the construction, but not the impact of the project as completed on the remaining property's value as a whole. *See generally id.* This Court summarized the law regarding the measure of damages for a temporary taking of a construction easement in *Combs*:

> A temporary taking, which denies a landowner all use of
> his or her property for a finite period, is no different in kind

from a permanent taking, and requires just compensation for the use of the land during the period of the taking.

Generally, the measure of damages for a temporary taking is the rental value *of the land actually occupied* by the condemnor. *Leigh v. Garysburg Mfg. Co.*, 132 N.C. 167, 170, 43 S.E. 632, 633 (1903); *accord Kimball Laundry Co. v. United States*, 338 U.S. 1, 7, 93 L. Ed. 1765, 1773 (1949) (concluding that the proper measure of compensation for temporary taking is the rental that probably could have been obtained); *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995) (explaining that when the Government takes property only for a period of years, it essentially takes a leasehold in the property, and thus, the value of the taking is what rental the marketplace would have yielded for the property taken; *State v. Sun Oil Co.*, 160 N.J. Super. 513, 527, 390 A.2d 661, 668 (1978) (holding that where a temporary construction easement is taken, the *rental value of the property taken is the normal measure of damages and is awarded for the period taken*)[.]

Where, as here, the temporary taking is in the form of a temporary construction easement, our Supreme Court has held that, in addition to paying the fair rental value of the easement area for the time used by the condemnor, the condemnor is liable for *additional elements of damages flowing from the use of the temporary construction easement*, which may include: (1) the cost of removal of the landowner's improvements from the construction easement that are paid by landowner; (2) the cost of constructing an alternate entrance to the property; (3) the changes made in the area resulting from the use of the easement that affect the value of the area in the easement or the value of the remaining property of the landowner; (4) the removal of trees, crops, or improvements from the area in the easement by the condemnor; and (5) the length of time the easement was used by the condemnor. *Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 107, 310 S.E.2d 338, 346 (1984); *see also* 26 Am. Jur.2d *Eminent Domain* § 283 (Where land has been appropriated for a temporary use, the measure of compensation *is the fair productive value of the property during the time in which it is held*. More

> specifically, the rental value during the period of the taking, together with any damage sustained by the property, may be awarded as full compensation.

*Id.* at 261-62, 719 S.E.2d at 62-63 (emphasis added) (citations, quotation marks, ellipses, and brackets omitted).

The trial court excluded evidence of loss of motel income during the construction period. Defendant contends the jury should have been allowed to consider "the interference with motel occupancy identified by Mr. Bidencope in his original appraisal report includ[ing] interference with access but also interference with ingress and egress, interference with parking, interference with walk-in revenue, and construction noise." Defendant cites to *Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 104, 310 S.E.2d 338, 344 (1984), to argue that loss of income is an "additional element[] of damage[,]" but the law simply does not support *that* type of damage. *See Dep't of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 6–10, 637 S.E.2d 885, 890-93 (2006).

In a section entitled, "ADMISSIBILITY OF LOST BUSINESS PROFITS EVIDENCE[,]" our Supreme Court explained that in a partial taking such as this, a landowner's loss of business income is not admissible evidence. *Id.* Although the Court was addressing valuation of the remainder of the land after a partial permanent taking, these same principles regarding loss of business profits would apply to valuation of a temporary construction easement:

During a proceeding to determine just compensation in a partial taking, the trial court should admit any relevant evidence that will assist the jury in calculating the fair market value of property and the diminution in value caused by condemnation. Admission of evidence that does not help the jury calculate the fair market value of the land or diminution in its value may confuse the minds of the jury, and should be excluded. *In particular, specific evidence of a landowner's noncompensable losses following condemnation is inadmissible.*

*Injury to a business, including lost profits, is one such noncompensable loss. It is important to note that revenue derived directly from the condemned property itself, such as rental income, is distinct from profits of a business located on the property.* This case is concerned with lost business profits. When evidence of income is used to valuate property, care must be taken to distinguish between income from the property and income from the business conducted on the property. . . .

The longstanding rule in North Carolina is that evidence of lost business profits is inadmissible in condemnation actions, as this Court articulated in *Pemberton v. City of Greensboro*, 208 N.C. 466, 470–72, 181 S.E. 258, 260–61 (1935). . . .

. . . .

Just compensation is not the value to the owner for his particular purposes. Awarding damages for lost profits would provide excess compensation for a successful business owner while a less prosperous one or an individual landowner without a business would receive less money for the same taking. Indeed, if business revenues were considered in determining land values, an owner whose business is losing money could receive less than the land is worth. Limiting damages to the fair market value of the land prevents unequal treatment based upon the use of the real estate at the time of condemnation. Further, paying business owners for lost business profits in a partial taking results in inequitable treatment of the business owner whose entire property is taken, in which case lost profits clearly are not considered.

> *Evidence of lost business profits is impermissible because recovery of the same is not allowed.* Additionally, the speculative nature of profits makes them improper bases for condemnation awards as they
>> depend on too many contingencies to be accepted as evidence of the usable value of the property upon which the business is carried on. Profits depend upon the times, the amount of capital invested, the social, religious and financial position in the community of the one carrying it on, and many other elements which might be suggested. What one man might do at a profit, another might only do at a loss. Further, even if the owner has made profits from the business in the past it does not necessarily follow that these profits will continue in the future.
>> Recognizing that profits can rarely be traced to a single factor, business executives rely on complex models to determine profitability. Further, the uncertain character of lost business profits evidence could burden taxpayers with inflated jury awards bearing little relationship to the condemned land's fair market value.
>> Moreover, our well-established North Carolina rule prohibiting lost business profits evidence comports with the federal rule.
>> . . . .
>> In summary, the prevailing rule excluding lost business profits evidence in condemnation actions is firmly rooted in our jurisprudence. As a case that comprehensively discussed and applied this enduring rule, *Pemberton* provides the framework upon which we base our decision today.

*Id.* (emphasis added) (citations, quotation marks, and footnotes omitted).

Turning back to Mr. Bidencope's excluded testimony and evidence, a motel's business is renting rooms, so its business income is derived from rent, but the proper

measure of damages is the rental value of the property actually taken—not the interference with the business income for the entire property. *See Combs*, 216 N.C. App. at 261, 719 S.E.2d at 62 ("[T]he measure of damages for a temporary taking is the rental value of the land actually occupied by the condemnor.") The distinction between damages for the property taken and business income for the entire property may be more obvious in a situation where access was entirely blocked for a period of time and the motel could not operate at all; the landowner would be entitled to the rental value of the land for its use as a motel, *but not* the business income that particular motel may have generated if it had been in operation. *See generally id.* at 261-62, 719 S.E.2d at 62-63. Here, the "land actually occupied" for the TCE was 0.184 acres of defendant's 3.573 acres, so the rental value of the 0.184 acres would be a proper element of the damages.[4] *Id.*

Furthermore, based upon the transcript, Mr. Bidencope assumed that access to the motel was entirely blocked at least part of the time during construction, but the evidence showed that access was never blocked; he also stressed that DOT *could* have blocked the access at any time, so access was uncertain. It is true that DOT *could* have blocked the access, but it did not. Although the access was less convenient

---

[4] Mr. Bidencope's appraisal and testimony addressed the rental value of the "TCE Area Loss" as well and that portion of the evidence is not at issue on appeal.

due to the construction project, it was open. To this extent, Mr. Bidencope's valuation was not based upon the actual conditions on the property.[5]

Also, Mr. Bidencope's appraisal seemed to consider the effect of the construction on the fair market value of the property as if it were being valued for sale *during* the construction. One portion of the appraisal stated:

> The motel's ability to function is affected due to the uncertainty and possible disturbance of ingress and egress during this period. A potential buyer or tenant operator looking to buy or rent the property on the effective date of the condemnation would consider this factor. . . . .
>
> . . . .
>
> . . . . The uncertainly of use adds risk and adversely impacts the operation of the remainder of the property, which impact[s] the real property market value that a knowledgeable and willing buyer would pay.

But the consideration of what a willing buyer would pay for the entire property *during the construction* is not part of the measure of damages for a temporary construction easement.[6] *See generally id.*

In summary, Mr. Bidencope's opinions regarding the motel's loss of income, the assumption of access being totally blocked to the motel, and the amount a willing

---

[5] Mr. Bidencope also assumed that the change in slope of the driveway made it "uncertain" that "large trucks and emergency vehicles" such as fire trucks could enter the property. Mr. Bidencope's appraisal stated that "[a] motel property cannot operate without the ability of emergency vehicles being able to access the property." But again, there was no evidence that emergency vehicles could not enter the property.

[6] Valuation during construction is also not part of the valuation of a permanent partial taking, since that valuation is based upon the legal fiction that the project has been completed immediately after the taking. *See generally Barnes v. Highway Commission.*, 250 N.C. at 387, 109 S.E.2d at 227.

buyer might pay for the property during construction were either not supported by the actual evidence or not proper considerations for the jury to calculate damages. The trial court did not abuse its discretion by granting the State's motion in limine on these issues.   This argument is overruled.

### III.    Conclusion

We affirm.

AFFIRMED.

Judges DILLON and INMAN concur.