JAMES M. WARD, Administrator of the Estate of JAMES WILLIAM WARD, Plaintiff v. LARRY McDONALD, Defendant

No. 895SC1351

(Filed 2 October 1990)

1. **Trial § 10.1 (NCI3d) — remark by court — need to shorten trial — no improper opinion**

    The trial court did not improperly express an opinion in remarking to the jury about the need to shorten the length of this wrongful death trial. N.C.G.S. § 1A-1, Rule 51(a).

    **Am Jur 2d, Trial §§ 91, 1065, 1066.**

2. **Automobiles and Other Vehicles § 474 (NCI4th) — driver's license — absence of motorcycle endorsement — negligence per se — proximate cause**

    It was negligence per se for the decedent to operate a motorcycle in this state without a motorcycle endorsement on his driver's license. However, such negligence was not actionable unless his failure to have the proper endorsement was a proximate cause of his death.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 625, 626, 1023.**

    **Lack of proper automobile registration or operator's license as evidence of operator's negligence. 29 ALR2d 963.**

3. **Automobiles and Other Vehicles §§ 37, 474 (NCI4th) — driver's license — absence of motorcycle endorsement — testimony not prejudicial**

    Plaintiff was not prejudiced by a highway patrolman's testimony in a wrongful death case that plaintiff's intestate, who was operating a motorcycle, did not have a motorcycle endorsement on his driver's license at the time of the accident where the testimony was offered on the issue of contributory negligence, and the jury was instructed not to consider that issue.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 625, 626, 1023.**

    **Lack of proper automobile registration or operator's license as evidence of operator's negligence. 29 ALR2d 963.**

**4. Trial § 52.1 (NCI3d) — denial of new trial on damages issue**

The trial court did not abuse its discretion in denying plaintiff's motion for a new trial on the issue of damages in a wrongful death action where the jury awarded plaintiff the amount stipulated by the parties as the total medical and funeral expenses incurred by plaintiff because of his intestate's death.

**Am Jur 2d, Damages §§ 1029, 1031; New Trial §§ 394, 403, 408.**

APPEAL by plaintiff and cross-appeal by defendant from judgment entered 3 July 1989 by *Judge Napoleon B. Barefoot* in NEW HANOVER County Superior Court. Heard in the Court of Appeals 21 August 1990.

Plaintiff, as Administrator of the Estate of James William Ward, instituted this civil action against defendant on 13 August 1987 to recover damages for the alleged wrongful death of James William Ward, who died 13 October 1986 as a result of a collision in New Hanover County, North Carolina. Defendant thereafter filed an answer denying the material allegations of plaintiff's complaint. On 11 November 1987, defendant filed an amendment to his answer alleging that plaintiff's intestate was contributorily negligent. On 30 November 1987, plaintiff filed a reply, denying the same, and seeking sanctions against defendant pursuant to G.S. § 1A-1, Rule 11. Plaintiff's motion for sanctions was subsequently denied by Judge Bradford Tillery.

On 18 May 1989, defendant filed for, but was denied, a motion for leave to supplement his answer by Judge Napoleon Barefoot.

The matter thereafter came on for trial on 19 June 1989. The jury returned a verdict reflecting that the plaintiff's intestate was killed by the negligence of the defendant and awarded plaintiff $8,350.42.

On 30 June 1989, plaintiff filed a motion for a new trial on the issue of damages pursuant to G.S. § 1A-1, Rule 59. The motion was, however, denied on 14 July 1989. Both the plaintiff and the defendant appeal the 3 July 1989 judgment.

*Shipman & Lea, by Gary K. Shipman, for plaintiff-appellant.*

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Vaiden P. Kendrick and John L. Coble, for defendant-appellee.*

JOHNSON, Judge.

The pertinent facts are as follows: On 13 October 1986 at approximately 9:30 p.m., James Ward (hereinafter "decedent," "intestate" or "Ward") was operating a 1981 Yamaha motorcycle in a southerly direction on U.S. Highway 117 approaching its intersection with Centennial Drive in New Hanover County. At the same time, defendant Larry McDonald was operating a 1986 Dodge truck in a northerly direction. Defendant's truck and Ward's motorcycle collided just as they approached the intersection of U.S. Highway 117 and Centennial Drive. Ward died as a result of the collision.

The testimonial account of James Richard Laughter, Sr., an employee of General Electric, is as follows: While traveling in a southerly direction on U.S. Highway 117 on 13 October 1986, he noticed a motorcycle behind him that was, in his opinion, traveling between 35 and 40 m.p.h. As he approached the turn lane for the southernmost entrance to the General Electric Plant outside of Wilmington, he slowed his vehicle to approximately 20 to 25 m.p.h. As he got midway down the turn lane, the motorcyle passed him going approximately 25 to 30 m.p.h. The motorcyle then proceeded down U.S. Highway 117 in a normal manner. At this time, the defendant's vehicle was stopped at the intersection waiting to turn left onto Centennial Drive. As the motorcycle proceeded in its lane of travel, he noticed that the traffic signal for traffic proceeding in a southerly direction was green. When the motorcycle reached a point approximately 20 feet from the intersection, defendant's truck turned into the path and struck the left side of James Ward's motorcycle. As a result of the collision, Ward was thrown approximately 41 feet. Although Ward's headlight was illuminated and his taillights were on, Laughter saw no brake lights come on the motorcycle as it entered the intersection.

At the time of the collision, Laughter was approximately 15 to 20 feet behind another car in the right-hand turn lane. The other car, driven by Kenneth Kornegay, was approximately 7 to 8 car lengths from the intersection when the accident occurred. Testimony elicited from Kornegay confirmed Laughter's statement that the signal for traffic proceeding south was green. He further testified that defendant's truck was stopped at the signal for northbound traffic, with his left-turn signal on. Kornegay did not, however, see the accident.

Trooper Howard L. Higgins of the North Carolina Highway Patrol testified that there were no skid marks at the point of impact which occurred in the middle of the southbound lane on U.S. Highway 117. As a result of his investigation, Trooper Higgins charged defendant with failing to yield the right of way and death by motor vehicle.

At trial, the parties stipulated, and the judge so instructed, that the total of the medical and funeral bills incurred by the plaintiff was $8,350.42.

On appeal, plaintiff brings forth six Assignments of Error. Defendant brings forth an additional three Assignments of Error on cross-appeal. Inasmuch as there is an appeal and a cross-appeal, we will first address the legal questions raised by plaintiff we believe to be decisive. We then will discuss the questions raised by defendant on cross-appeal.

### PLAINTIFF'S APPEAL

[1] First, plaintiff contends that the trial judge committed prejudicial error in remarking to the jury about the need to shorten the length of the trial. We disagree.

Unquestionably, G.S. § 1A-1, Rule 51(a) provides that:

. . . a judge shall not give an opinion as to whether or not a fact is fully or sufficiently proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence.

In the instances where a plaintiff alleges that he has been deprived of his right to a fair trial by improper remarks in the hearing of the jury, we must first determine whether the trial judge's remarks, in light of the circumstances under which they were made, were improper. We must then determine whether such remarks were prejudicial. *State v. King*, 311 N.C. 603, 320 S.E.2d 1 (1984).

After considering the complained of remarks made by the trial judge and the circumstances in which they were made, we find them to be something other than opinions. Assuming, *arguendo*, that the remarks were improper, we nonetheless find them to be lacking in prejudice. Accordingly, the trial court properly denied plaintiff's motion for a new trial. This assignment is overruled.

WARD v. McDONALD

[100 N.C. App. 359 (1990)]

Second, plaintiff contends that the trial court erred in admitting testimony that the decedent did not have a motorcycle endorsement at the time of the accident. We disagree.

G.S. § 20-7(a1) provides that

[n]o operator's or chauffeur's license issued on or after October 1, 1979 shall authorize the licensee to operate a motorcycle unless the license has been appropriately endorsed by the Division to indicate that the licensee has passed special road and written (or oral) tests demonstrating competence to operate a motorcycle. . . .

A violation of the above-quoted statute is negligence *per se. See Hoke v. Greyhound Corporation*, 226 N.C. 692, 40 S.E.2d 345 (1946).

According to the uniform decisions of this Court, the violation of a statute imposing a rule of conduct in the operation of a motor vehicle and enacted in the interest of safety has been held to constitute negligence *per se*, but before the person claiming damages for injuries sustained can be permitted to recover he must show a causal connection between the injury received and the disregard of the statutory mandate. (Emphasis in original.)

*Aldridge v. Hasty*, 240 N.C. 353, 82 S.E.2d 331 (1954). "What is the proximate cause of an injury is ordinarily a question for the jury to decide." *Hoke, supra* at 698, 40 S.E.2d at 350. It is to be determined in light of the surrounding circumstances. *Id.*

[2, 3] Under the facts in the instant case, it was clearly negligence *per se* for the decedent, who lacked a motorcycle endorsement at the time of the accident, to have been driving a motorcycle in this State. Such negligence, however, is not actionable unless his failure to have the proper endorsement was either the proximate cause or one of the proximate causes of his death. *Id.* Having reviewed the complained of evidence, we find that the testimony of Trooper Higgins that Ward did not have a motorcycle endorsement at the time of the accident was offered on the issue of contributory negligence. While the issue of whether the decedent was contributorily negligent was not submitted to the jury, the jury was subsequently instructed not to consider this affirmative defense. In the absence of evidence showing that the jury acted contrary to the court's instructions, we find no prejudicial effect of Trooper Higgins' testimony. This assignment is overruled.

WARD v. McDONALD

[100 N.C. App. 359 (1990)]

[4] Last, plaintiff contends that the trial court abused its discretion in failing to award plaintiff a new trial on the issue of damages. Based upon the applicable standard of appellate review and the evidence presented at trial, we find no abuse of discretion.

The standard for appellate review of a trial court's discretionary ruling either granting or denying a motion to set aside a verdict and order of a new trial is prohibitive. *Pearce v. Fletcher*, 74 N.C. App. 543, 328 S.E.2d 889 (1985). As previously set forth, the inherent and traditional principles provide that appellate review "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing the heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. Realizing that such principles are well entrenched, we nevertheless find it necessary to reaffirm settled law.

> While the necessity for exercising this discretion, in any given case, is not to be determined by the mere inclination of the judge, but by a sound and enlightened judgment in an effort to attain the end of all law, namely, the doing of even and exact justice, we will yet not supervise it, except, perhaps, in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited. *Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915).

> The power of the court to set aside the verdict as a matter of discretion has always been inherent, and is necessary to the proper administration of justice. The judge is not a mere moderator, but is an integral part of the trial, and when he perceives that justice has not been done it is his duty to set aside the verdict. His discretion to do so is not limited to cases in which there has been a miscarriage of justice by reason of the verdict having been against the weight of the evidence. *Bird v. Bradburn*, 131 N.C. 488, 489, 42 S.E. 936, 937 (1902).

*Worthington v. Bynum, supra* at 482-83, 290 S.E.2d at 602-03.

In North Carolina, the recovery for a wrongful death action is based largely on the losses suffered by the individual beneficiaries. *Scallon v. Hooper*, 58 N.C. App. 551, 293 S.E.2d 843, *cert. denied*,

306 N.C. 744, 295 S.E.2d 480 (1982). Our wrongful death statute was designed by the General Assembly to compensate, as fully as possible, persons for the loss of their decedent. *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 291 S.E.2d 897, *aff'd*, 307 N.C. 267, 297 S.E.2d 397 (1982). As articulated in G.S. § 28A-18-2(b), damages recoverable for death by wrongful act include the following:

(1) Expenses for care, treatment and hospitalization incident to the injury resulting in death;

(2) Compensation for pain and suffering of the decedent;

(3) The reasonable funeral expenses of the decedent;

(4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected:

a. Net income of the decedent,

b. Services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the persons entitled to the damages recovered,

c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered;

(5) Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, willful or wanton injury, or gross negligence;

(6) Nominal damages when the jury so finds.

We note that

[t]he present monetary value of the decedent to the persons entitled to receive the damages will usually defy any precise mathematical computation. [Citations omitted.] *Therefore, the assessment of damages must, to a large extent, be left to the good sense and fair judgment of the jury* . . . The fact that the full extent of the damages must be a matter of some speculation is no ground for refusing all damages. [Citations omitted.] . . . "The damages

WARD v. McDONALD

[100 N.C. App. 359 (1990)]

in any wrongful death action are to some extent uncertain and speculative. A jury may indulge in such speculation where it is necessary and there are sufficient facts to support speculation." (Citations omitted.) (Emphasis added.)

*Beck v. Carolina Power & Light Co.*, *supra* at 381-82, 291 S.E.2d at 902, *quoting Brown v. Moore*, 286 N.C. 664, 673, 213 S.E.2d 342, 348-49 (1975). Guided by these principles, we turn to the instant case.

Plaintiff presented the testimony of, *inter alios*, Retha Ward, the decedent's mother, and Robert Bunting, an economist, in an attempt to show "the present monetary value" of Ward to his parents. The jury, as the sole judges of whether the plaintiff sustained damages, was authorized to award actual damages or, if they found none, to award nominal damages. In so doing, the jury determined the relative weight and credibility to be given to the testimony of each witness and found actual damages. We are unable to adopt plaintiff's contention that the jury arbitrarily ignored his proof of damages. Thus, we find no abuse of discretion. This assignment is overruled. Accordingly, the trial court's order denying plaintiff's motion for a new trial is affirmed.

### DEFENDANT'S CROSS-APPEAL

We note at the outset that defendant's cross-appeal is conditioned upon the outcome of plaintiff's appeal. In view of the fact that this Court has affirmed the trial court's order denying plaintiff's motion for a new trial, defendant's appeal is dismissed.

In sum,

Plaintiff's appeal is affirmed.

Defendant's cross-appeal is dismissed.

Affirmed; dismissed.

Judge PARKER concurs.

Judge PHILLIPS concurs in the result.