HELEN C. BAYNOR, ADMINISTRATRIX OF THE ESTATE OF EARL J. BAYNOR, SR., PLAINTIFF V. ELISABETH COOK, M.D., BEAUFORT EMERGENCY MEDICAL ASSOCIATES, ROBERT E. SANDY, M.D., AND SEABOARD RADIOLOGY ASSOCIATES, P.A., DEFENDANTS

No. COA96-326

(Filed 4 February 1997)

**Physicians, Surgeons, and Other Health Care Professionals § 149— medical malpractice—instructions—national standard of care—community standard**

The trial court did not err by refusing to instruct the jury in a medical malpractice action on a national standard of care for the treatment of thoracic aortic rupture and by giving the jury the "same or similar communities" instruction pursuant to N.C.G.S. § 90-21.12. Although plaintiff's experts testified that there is a national standard of care for the treatment of such ruptures, they also testified that the community standard in Beaufort County was the same as that across the country, and the jury could not have failed to understand the relationship between a national standard of care and a similar community standard of care.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 218, 219, 363.**

**Modern status of "locality rule" in malpractice action against physician who is not a specialist. 99 ALR3d 1133.**

**Standard of care owed to patient by medical specialist as determined by local, "like community," state, national, or other standards. 18 ALR4th 603.**

Appeal by plaintiff from judgment entered 14 October 1994 by Judge Cy A. Grant in Beaufort County Superior Court. Heard in the Court of Appeals 3 December 1996.

*Faison & Fletcher, by C. William Faison, for plaintiff-appellant.*

*Herrin & Morano, by Mickey A. Herrin and J. Nathan Duggins III, for defendants-appellees Elisabeth Cook, M.D. and Beaufort Emergency Medical Associates.*

*Walker, Barwick, Clark & Allen, L.L.P., by Robert D. Walker, Jr. and O. Drew Grice, Jr., for defendants-appellees Robert E. Sandy, M.D. and Seaboard Radiology Associates, P.A.*

WALKER, Judge.

Plaintiff's decedent, Earl J. Baynor, was involved in an automobile accident on 27 April 1992. Defendant, Dr. Elisabeth Cook, a board certified specialist in emergency medicine, treated Mr. Baynor following his admittance to the hospital. After reviewing the chest x-rays she ordered and observing Mr. Baynor for several hours, she released him with discharge instructions. The next day, defendant, Dr. Robert Sandy, a board certified specialist in radiology, reviewed the x-rays ordered by Dr. Cook and suggested that Mr. Baynor had a possible hilar mass. Dr. Sandy called the emergency room to determine Mr. Baynor's admission status and after learning he had been discharged, Dr. Sandy took no further action other than to suggest in his report that Mr. Baynor undergo a CT scan for further evaluation. On 1 May 1992, Mr. Baynor died of a thoracic aortic rupture.

At trial, both parties presented expert witnesses that testified about the applicable standard of care. Plaintiff's experts both testified that there was a national standard of care for the diagnosis and treatment of a thoracic aortic rupture (TAR). Plaintiff presented the testimony of Dr. George Podgorny concerning defendant Cook's treatment of Mr. Baynor. Dr. Podgorny testified that he was familiar with the national standard of care for the diagnosis and treatment of a TAR. He also testified that he was familiar with the standard of care of an emergency room physician in Beaufort County and that in his opinion defendant Cook deviated from the applicable standard of care. Dr. Jerome Shapiro similarly testified he was familiar with the national standard of care and that he would not expect the standard of care in Washington, North Carolina to differ from this standard. Further, he stated that the applicable standard of care would be the same regardless of the community.

Defendants Cook and Beaufort Emergency Medical Associates presented expert witnesses who testified that they were familiar with the standard of care of an emergency room physician in Beaufort County, North Carolina and that Dr. Cook did not deviate from that standard of care in her treatment of Mr. Baynor. Defendants Dr. Sandy and Seaboard Radiology Associates presented expert witnesses who testified that they were familiar with the standard of care of a radiologist in Beaufort County, North Carolina and that Dr.

Sandy did not deviate from that standard in his treatment of Mr. Baynor.

Plaintiff requested the trial court to instruct the jury as follows:

> You are instructed that although the North Carolina General Statutes established a method for ascertaining the standard of care which is to be determined in accord with the standard of practice among members of the same health care profession, similar training and experience situated in the same or similar community where an expert has or have testified, that the national standard of care exists, the diagnosis and treatment of thoracic aortic injuries following blunt chest trauma, such as an automobile collision, and it has testified as to the national standard of care, and that, the national standard of care has become the local standard of care, then you may find that the national standard of care applies, and may apply such national standard of care to determine whether Defendants Cook and Sandy have met the standard of care in their treatment of Earl Baynor[.]

This request was denied and the trial court instead instructed on the standard of care as mandated by N.C. Gen. Stat. § 90-21.12 and set forth in the Pattern Jury Instructions, Civil 809.00. N.C. Gen. Stat. § 90-21.12 states:

> In any action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental or other health care, the defendant shall not be liable . . . unless the trier of the facts is satisfied . . . that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities. . . .

The trial court instructed the jury in accordance with Pattern Jury Instruction, Civil 809.00 as follows:

> If the physician holds herself out as having special knowledge and skill in the type of health care service rendered by her, and if the patient employs her as a specialist, the physician must perform her duty to the patient in accordance with the standards of practice that may differ from those of a general practitioner. She must render the health care service in accordance with the stand-

ards of practice exercised by like specialists with similar training and experience who are situated in the same or similar communities at the time the health care service is rendered.

This instruction was given concerning Dr. Cook's negligence and a similar instruction was given regarding Dr. Sandy.

Plaintiff's only assignment of error is that the trial court committed reversible error by denying her request for an instruction on the national standard of care.

Plaintiff argues that the requested instruction on the national standard of care was warranted by the evidence and in accordance with North Carolina law. Plaintiff also contends that since her evidence was limited to the national standard of care, an instruction on the national standard was warranted.

Plaintiff relies on *Rucker v. Hospital*, 285 N.C. 519, 206 S.E.2d 196 (1974) in support of her argument. In *Rucker*, the plaintiff's expert testified that he was not familiar with the defendant hospital but he was familiar with standards and practices in duly accredited hospitals throughout the United States and that the treatment of gunshot wounds was uniform throughout the country. The trial court excluded this testimony but the Supreme Court reversed stating that because the defendant hospital was a fully accredited hospital, this witness should have been allowed to testify as to the applicable standard of care for gunshot wounds since the standards were the same in accredited hospitals throughout the nation. *Id.* at 526, 206 S.E.2d at 201.

Plaintiff asserts that the holdings in *Rucker* and later cases establish that our law allows a doctor's conduct to be judged against a national standard of care when the standard of care is the same across the country. We do not read *Rucker* to stand for plaintiff's proposition. Instead, *Rucker* allowed an expert to testify because he was familiar with accredited hospitals across the country and that the treatment of gunshot wounds was the same at all such hospitals, not because North Carolina had adopted a national standard of care. In *Page v. Hospital*, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980), this Court stated:

By adopting the "similar community" rule in G.S. 90-21.12 it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers and not

to exclude testimony such as that offered in this case where it was shown that the witness was familiar with the standards of hospitals in adjoining and nearby communities.

The Court noted that the statute was designed to overcome the strict "locality" rule that had previously existed in this State. *Id.* Therefore, it is apparent that the "similar community" requirement in the statute is not confined to North Carolina but would apply to communities within and without our State.

Plaintiff also argues that her requested instruction on a national standard of care should have been given to bring into the jury's view the relationship between the evidence presented and the legal issues involved. Plaintiff claims that the trial court's failure to instruct the jury on the national standard of care left the jury to wonder how it was to consider the evidence on the national standard of care. Therefore, the jury must have focused on the local standard of care. We find plaintiff's arguments unpersuasive.

Dr. Podgorny testified that he was familiar with the standard of care for an emergency room physician in Beaufort County and Dr. Shapiro testified he would not expect the standard of care in Washington, North Carolina to differ from the national standard of care with which he was familiar. Thus, the jury heard testimony that the community standard in Beaufort County for the treatment of TARs is the same across the country. The trial court properly allowed plaintiff's experts to testify that based on their familiarity with the national standard of care as related to a common medical issue (TARs), this standard of care did not vary depending on the community. Plaintiff's arguments assume that the jury failed to understand the relationship between a national standard of care and a similar community standard of care. We find nothing in the record to support this assertion.

No error.

Judges LEWIS and SMITH concur.