CARLA S. MARLEY AND KENNETH R. MARLEY, PLAINTIFFS V.
ROBERT G. GRAPER, M.D. AND PETER R. YOUNG, M.D., DEFENDANTS

No. COA98-1445

(Filed 2 November 1999)

1. **Trials— judge's comment—not an impermissible expression of opinion**

    There was no impropriety in a medical malpractice action in the court's comment, when accepting an expert witness, "he's certainly qualified and accepted for those purposes in each of those areas" when he had earlier accepted experts with statements to the effect that the witness was qualified and would be permitted to offer an opinion in the appropriate area.

2. **Medical Malpractice— witnesses—medical expert—standard of practice in similar communities**

    There was no error in a medical malpractice case from Greensboro where an expert did not testify that he was familiar with the standard of care for Greensboro, but the import of his testimony was that the defendant met the highest standard of care found anywhere in the United States. This testimony was sufficient to meet the requirements of N.C.G.S. § 90-21.12.

**3. Evidence— exhibits—created during cross-examination**

There was no abuse of discretion during a medical malpractice action where the court did not allow plaintiffs to generate an exhibit during trial while a witness was undergoing cross-examination by extracting and charting portions of the testimony because the court determined that the proposed chart or summary did not illustrate the testimony of the witness and was a form of premature final argument.

**4. Evidence— medical malpractice—plaintiff's medical records—alcohol abuse**

The trial court did not err in a medical malpractice action by allowing evidence of plaintiff's medical records indicating a possibility of a history of alcohol abuse to explain defendants' consideration of alcohol withdrawal as a potential cause of her confusion or hallucinations after surgery. It was both logical and appropriate for defendants to consider various causes for plaintiff's atypical behavior after surgery as part of the process of diagnosis and treatment. Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable.

Appeal by plaintiffs from judgment entered 15 September 1997 and order entered 12 January 1998 by Judge Raymond A. Warren in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 August 1999.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellants.*

*Golding Holden Cosper Pope & Baker, LLP, by John G. Golding, for defendant-appellee Graper.*

*Carruthers & Roth, P.A., by Richard L. Vanore and Norman F. Klick, Jr., for defendant-appellee Young.*

EDMUNDS, Judge.

Plaintiffs appeal from judgment and order entered in a medical malpractice trial. We find no error.

On 1 February 1991, plaintiff Carla Marley (Marley) was admitted to Moses H. Cone Memorial Hospital in Greensboro, North Carolina, for a modified radical mastectomy, to be performed by defendant

MARLEY v. GRAPER

[135 N.C. App. 423 (1999)]

Peter R. Young, M.D. (Young), and reconstructive surgery, to be performed by defendant Robert G. Graper, M.D. (Graper). Following surgery, Marley experienced memory loss, confusion, hallucinations, and vision impairment. On 7 February 1991, an oncologist diagnosed that Marley suffered from hypoxia and anemia and ordered a blood transfusion and oxygen. On 19 February 1991, a neuro-ophthalmologist examined Marley and diagnosed bilateral ischemic optic neuropathy, a condition caused by decreased blood flow to the end of the optic nerve, leading to tissue death.

Plaintiffs (Marley and her husband) filed suit against Young and Graper, alleging negligence, which proximately caused Ms. Marley's loss of vision, and loss of consortium. The trial began 18 August 1997. The jury returned a verdict of no negligence, and the court entered judgment in favor of defendants. Plaintiffs' motion for a new trial was denied by order entered 12 January 1998. Plaintiffs appeal.

I.

[1] Plaintiffs first contend that the trial court's comment, when accepting one of defendants' witnesses as an expert, was an impermissible expression of opinion. Although the trial court responded to the tender of other experts by both plaintiffs and defendants with statements to the effect that the witness was qualified as an expert and would be permitted to offer an opinion in the appropriate area of expertise, the trial court accepted defendants' witness as an expert in the fields of ophthalmology, pediatric ophthalmology, and neuro-ophthalmology, by stating, "[h]e's certainly qualified and accepted for those purposes in each of those areas. He may offer an opinion as appropriate in his area of expertise." Plaintiffs argue that "the court's manner and words recorded in the record clearly demonstrate that the court placed more significance and more credibility on the testimony of [defendants' witness]."

Although defendants initially contend that plaintiffs did not preserve this issue by objecting to the judge's comment, we need not address this argument because, preserved or not, this issue lacks merit. "The conduct of a trial is left to the sound discretion of the trial judge, and absent abuse of discretion, will not be disturbed on appeal." *Marcoin, Inc. v. McDaniel*, 70 N.C. App. 498, 508, 320 S.E.2d 892, 899 (1984). More specifically, our Supreme Court has held:

It is well recognized in this jurisdiction that a litigant has a right by law to have his cause tried before an impartial

judge without any expressions from the trial judge which would intimate an opinion by him as to weight, importance or effect of the evidence. However, this prohibition applies only to an expression of opinion related to facts which are pertinent to the issues to be decided by the jury, and it is incumbent upon the appellant to show that the expression of opinion was prejudicial to him.

*Kanoy v. Hinshaw*, 273 N.C. 418, 426, 160 S.E.2d 296, 302 (1968) (citations omitted).

This Court reviews remarks made by the trial judge in the presence of the jury through a two-step process: (1) we first determine whether the comments were improper and, if so, (2) whether they were prejudicial. The trial court's remark

must be considered in the light of the circumstances under which it was made. This is so because "a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

*Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 103, 310 S.E.2d 338, 344 (1984) (citations omitted). Additionally, "[m]ore than a bare possibility of prejudice from a remark of the judge is required to overturn a verdict or judgment," and "[w]here a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial." *Id.* at 104, 310 S.E.2d at 345.

North Carolina appellate courts have been somewhat reluctant to find comments by a trial court to be either erroneous or prejudicial. Factors the courts have considered include whether the comment occurred in isolation, any ambiguity in the comment, and the degree to which the comment suggested lack of impartiality. *See, e.g., Colonial Pipeline*, 310 N.C. 93, 310 S.E.2d 338 (holding not prejudicial judge's comment during colloquy with counsel that he did not believe particular evidence to be relevant); *Ward v. McDonald,* 100 N.C. App. 359, 396 S.E.2d 337 (1990) (holding that judge's comment to jury about need to shorten length of trial not prejudicial); *Lenins v. K-Mart Corp.*, 98 N.C. App. 590, 391 S.E.2d 843 (1990) (holding that judge's explanatory statement to venire during jury selection for shoplifting trial that "[o]f course, [defendant] denies that she had engaged in shoplifting, and of course, for that reason she was

stopped" was not a comment on whether any fact had been proved); *Marcoin*, 70 N.C. App. 498, 320 S.E.2d 892 (holding that trial judge's comments such as "I don't want you gentlemen to play games" to attorneys for both parties not erroneous); *Financial Corp. v. Transfer, Inc.*, 42 N.C. App. 116, 256 S.E.2d 491 (1979) (holding the following statement by the trial court not improper in the context of entire instruction: "Ladies and gentlemen, you have been handed plaintiff's Exhibit 2. Each of you may examine it to the extent that you feel appropriate and necessary. Examine it very carefully."); *Lawrence v. Insurance Co.*, 32 N.C. App. 414, 232 S.E.2d 462 (1977) (holding that, when expert stated that he was not telling jury he knew what caused the fire in question, judge's comment "[w]ell, I think that's exactly what he has done" at most harmless error).

By contrast, where trial courts have made repeated or unambiguous comments indicating a lack of impartiality, reviewing courts have found prejudice so manifest as to require reversal. *See, e.g., Sherrod v. Nash General Hospital*, 348 N.C. 526, 500 S.E.2d 708 (1998) (finding error in trial court's statement in presence of jury that defendant psychiatrist was expert in general psychiatry); *McNeill v. Durham County ABC Bd.*, 322 N.C. 425, 368 S.E.2d 619 (1988) (finding reversible error in cumulative effect of trial judge's thirty-seven hostile remarks toward defendant); *Key v. Welding Supplies*, 273 N.C. 609, 160 S.E.2d 687 (1968) (finding error where trial judge provided jury with extended review of defendant's contentions but failed to review plaintiffs' contentions); *Galloway v. Lawrence*, 266 N.C. 245, 145 S.E.2d 861 (1966) (finding error in trial court's statement in the presence of the jury that defendant physician was expert in surgery); *Burkey v. Kornegay*, 261 N.C. 513, 135 S.E.2d 204 (1964) (holding that trial court's statement that witness was "of perhaps weak mentality" was prejudicial expression of opinion); *State v. Watson*, 1 N.C. App. 250, 161 S.E.2d 159 (1968) (finding prejudicial error in trial court's statement, "it is not in evidence so maybe it could not even be explained that this car went out of control on this slight curve").

Here, we find no impropriety in the court's statement. A judge is not required to recite an unvarying mantra every time an expert witness is qualified. The declaration that "[h]e's certainly qualified and accepted for those purposes in each of those areas" was no more indicative of judicial partiality than was the court's earlier statement that "I am satisfied with his qualifications," made upon accepting one of plaintiffs' experts. This assignment of error is overruled.

II.

**[2]** Plaintiffs next contend the trial court erred in allowing into evidence the video deposition of one of defendants' expert witnesses. Plaintiffs argue that "the questions by defense counsel did not comply with the statutory requirements for experts testifying in a medical malpractice case" in that the witness never testified that "he was familiar with the standard of practice among practitioners with similar training and experience in Greensboro or the same or similar communities."

N.C. Gen. Stat. § 90-21.12 (1997) sets out the standard of proof necessary to establish medical malpractice:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

We have observed that section 90-21.12 "was designed to overcome the strict 'locality' rule that had previously existed in this State. Therefore, it is apparent that the 'similar community' requirement in the statute is not confined to North Carolina but would apply to communities within and without our State." *Baynor v. Cook*, 125 N.C. App. 274, 278, 480 S.E.2d 419, 421 (1997) (citation omitted). As a result, while "it was the intent of the General Assembly to avoid the adoption of a national or regional standard of care for health providers," *Page v. Hospital*, 49 N.C. App. 533, 535, 272 S.E.2d 8, 10 (1980), if the standard of care for a given procedure is "the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community," *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984); *see also Rucker v. Hospital*, 285 N.C. 519, 206 S.E.2d 196 (1974). Parties have latitude in formulating questions used to elicit the standard from an expert witness. "[T]he phrasing of the questions used . . . need not follow § 90-21.12 verbatim; to so require would improperly place form over substance. However, the questions asked must elicit the relevant standard of care as set out in that

statute." *Tucker v. Meis*, 127 N.C. App. 197, 198, 487 S.E.2d 827, 829 (1997).

In the case at bar, defendants offered expert testimony by means of a videotaped deposition. After the witness testified as to his training and credentials, the following exchange took place between the witness and defendant Graper's attorney:

Q. [] And have you had opportunity to become familiar with accepted standards for the practice of plastic and reconstructive surgery throughout the various areas of the United States?

A. Yes.

Q. And how have you been able to do that?

A. Well, as a teacher of plastic surgery, I travel routinely around the United States lecturing or operating in the various parts of the country, and therefore I'm familiar with all general areas of the country and the plastic surgery practice there.

. . . .

Q. Did you form an opinion as to whether the care rendered by Dr. Graper in connection with—first of all, with the surgery that he performed met accepted standards for the practice of plastic and reconstruction—reconstructive surgery in February of 1991 in a community like Greensboro or other similar communities?

A. Yes.

. . . .

A. After reviewing the operative note and the informed consent as well as the postoperative care by the notes, I did not feel he deviated from the standard of care nor did the general surgeon.

. . . .

Q. All right. And did you form an opinion as to whether or not in the care rendered after the surgery of February 1, 1991 Dr. Graper met accepted standards of practice of plastic and reconstructive surgery in a community like Greensboro?

. . . .

A. My opinion, again after reviewing the notes and the data, was that he met the standard of care for plastic surgery not only in [Greensboro] but anywhere in the United States.

Additionally, the witness testified that Graper's care of Marley "met accepted standards for the practice of plastic surgery by a board certified plastic and reconstructive [surgeon]."

Although the witness did not testify that he was familiar with the standard of care for Greensboro, the testimony he did provide obviated the need for such familiarity. The import of the witness's testimony was that, in his opinion, Graper met the highest standard of care found anywhere in the United States. Therefore, if the standard of care for Greensboro matched the highest standard in the country, Graper's treatment of Marley met that standard; if the standard of care in Greensboro was lower, Graper's treatment of Marley exceeded the area standard. This testimony is sufficient to meet the requirements of section 90-21.12. This assignment of error is overruled.

### III.

**[3]** Next, plaintiffs contend "the trial court erred when it refused to allow Marley's counsel to summarize . . . defendant Young's testimony during cross-examination." Counsel for plaintiffs sought to illustrate defendant Young's cross-examination testimony regarding Marley's blood loss by creating a chart while the cross-examination was under way. Plaintiffs argue that evidence of the loss was latent in Marley's medical charts.

Although plaintiffs cite North Carolina Rule of Evidence 1006, that rule does not address the question raised by this assignment of error. Rule 1006 states in pertinent part: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." N.C. Gen. Stat. § 8C-1, Rule 1006 (1992). In the absence of North Carolina cases addressing this rule in the context now before us, we turn for guidance to United States cases addressing the Federal Rules of Evidence. Federal Rule 1006, which is identical to the state rule, allows a summary of voluminous materials to be admitted into evidence even though the materials themselves are admissible but not necessarily admitted. *See U.S. v. Bakker*, 925 F.2d 728 (4th Cir. 1991).

By contrast, plaintiffs here attempted to generate an exhibit during trial while the witness was undergoing cross-examination by extracting and charting portions of that testimony. Such a procedure is governed by Rule 611(a), which states: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.C. Gen. Stat. § 8C-1, Rule 611(a) (1992). North Carolina Rule 611(a) is identical to its federal counterpart and regulates use of demonstrative evidence during trial. *See* Fed. R. Evid. 611 advisory committee's note; N.C. Gen. Stat. § 8C-1, Rule 611 commentary. Consistent with the language of this rule, it lies within the sound discretion of the trial court to admit such evidence, *see U.S. v. Johnson*, 54 F.3d 1150 (4th Cir. 1995), or even allow use of such evidence in the courtroom, *see U.S. v. Bray*, 139 F.3d 1104 (6th Cir. 1998).

We find the standard set forth in these Federal cases persuasive. Therefore, we must decide whether the trial court abused its discretion in refusing to allow plaintiffs to create the requested exhibit. When the issue arose, the court excused the jury and conducted a hearing where counsel for both sides were heard. The record reveals that the court intuitively realized that Rule 1006 did not apply to the situation at hand. The court determined that the proposed chart or summary did not illustrate the testimony of the witness under cross-examination, but was instead a form of final argument delivered prematurely. Although the court recognized that evidence of this nature could be helpful to the jury under proper circumstances, he sustained defendants' objection.

The trial court was in the best position to hear the nature and complexity of the evidence being elicited from the witness, as well as the nature of the exhibit plaintiffs proposed to create. The trial court did not forbid counsel from arguing the significance of the witnesses' testimony. We are unable to find that the trial court abused its discretion in sustaining plaintiffs' objection. This assignment of error is overruled.

IV.

[4] Plaintiffs next contend that the trial court erred in admitting past medical records of Marley. During cross-examination of one of plain-

tiffs' experts, the witness was asked whether significant alcohol use could cause reactions similar to the one experienced by Marley after her surgery. The witness responded: "People who drink alcohol on a regular basis—they may say they are only social drinkers, but they can go into delirium tremors [sic]." Plaintiffs' counsel objected, stating: "There is no evidence in this record that this lady has had any kind of alcohol problem." Thereafter, defendants offered into evidence 1985 medical records of Marley, which indicated that she had been counseled about excessive drinking. Plaintiffs again objected, and, after hearing argument of counsel out of the jury's presence, the court concluded:

> [A] question has been asked about the condition, could it be aggravated by alcohol consumption, and there is a note that the jury can view along with the Doctor and the Attorney that said something about DT's or delirium tremors [sic]. In front of the jury [plaintiffs' counsel] made an objection saying there was no evidence of that, that there was any kind of alcohol consumption . . . .
>
> . . . I am not going to allow you to pass that exhibit at this point without further evidence to the jury because it contains a lot of irrelevant stuff about her life that they don't need to know about at this point. . . . I think the relevancy in this particular case outweighs the prejudice, but only as to the fact that this note was made. . . . Now, if you want to ask questions about this alcohol consumption in 1985, I don't find it to be irrelevant or overly prejudicial.

Plaintiffs claim that the evidence is irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Although relevancy questions are not discretionary, the trial court is entitled to great deference on appeal. *See In re Will of Jones*, 114 N.C. App. 782, 786, 443 S.E.2d 363, 365 (1994).

After observing Marley's post-operative behavior, Graper noted on her charts the possibility that she was suffering from delirium tremens resulting from alcohol withdrawal; he also later discussed that possibility with Marley's husband. It was both logical and appropriate for defendants to consider various causes for Marley's atypical

behavior after surgery as part of the process of diagnosis and treatment. It was proper for the trial court to allow evidence of Marley's medical records indicating the possibility of a history of alcohol abuse to explain the reason defendants considered the possibility that alcohol withdrawal was a potential cause of Marley's confusion or hallucinations. This assignment of error is overruled.

## V.

Finally, plaintiffs contend the trial court erred in denying their motions for new trial and for judgment notwithstanding the verdict. Because the record reveals that no motion for judgment notwithstanding the verdict was made, we address only the former motion. The granting or denial of a motion for new trial lies within the trial court's sole discretion. *See Worthington v. Bynum and Cogdell v. Bynum,* 305 N.C. 478, 290 S.E.2d 599 (1982). As our Supreme Court has stated:

> Appellate review "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." [*Bynum,* 305 N.C. at 482, 290 S.E.2d at 602.] The trial court's discretion is " 'practically unlimited.' " *Id.* [at 482], 290 S.E.2d at 603 (quoting from *Settee v. Electric Ry.,* 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915)). A "*discretionary* order pursuant to [N.C.]G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Id.* at 484, 290 S.E.2d at 603. "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

*Campbell v. Pitt County Memorial Hosp.,* 321 N.C. 260, 264-65, 362 S.E.2d 273, 275-76 (1987) (last three alternations in original), *quoted in Anderson v. Hollifield,* 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997). Using the aforementioned test, we see no abuse of discretion. As support for their motion, plaintiffs rely upon their other assignments of error, each of which we have held to be unfounded. There was sufficient evidence to support the jury's verdict, and the trial was without prejudicial error. This assignment of error is overruled.

STATE OF NEW YORK v. PAUGH

[135 N.C. App. 434 (1999)]

No error.

Judges WYNN and JOHN concur.