PAUL JOSEPH DANIEL AND LISA HORNE DANIEL, PLAINTIFFS V. JEFF G. MOORE, INDIVIDUALLY, JEFF G. MOORE ENTERPRISES, INC., THROUGH ITS REGISTERED AGENT JEFF G. MOORE, THE COUNTY OF WAYNE, THROUGH ITS MANAGER WILL R. SULLIVAN, AND JOSEPH B. NASSEF, JR., INDIVIDUALLY AND IN HIS CAPACITY AS A BUILDING INSPECTOR FOR THE COUNTY OF WAYNE, DEFENDANTS

No. COA03-458

(Filed 1 June 2004)

## Attorneys; Judgments— attorney-client relationship—consent judgment—authority

The trial court abused its discretion in an action arising out of the faulty construction of plaintiffs' home by denying plaintiffs' motion for a new trial even though plaintiffs' attorney agreed to entry of a consent judgment on 10 October 2002 after plaintiffs faxed and e-mailed communications on 13 September 2002 to their attorney stating that she did not have authority to enter into the consent judgment and plaintiffs wrote a letter dated 24 September 2002 that discharged their attorney, because: (1) an attorney-client relationship is based upon principles of agency and an agency can be revoked at any time before a valid and binding contract has been made with a third party; and (2) plaintiffs met their burden of proving the invalidity of the consent judgment by showing they revoked their attorney's authority to enter the consent judgment before final entry of the judgment.

Judge BRYANT dissenting.

Appeal by plaintiffs from judgment entered 10 October 2002 and from order filed 8 January 2003 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 14 January 2004.

*Shipman & Associates, L.L.P., by Meredith P. Ezzell, for plaintiff-appellants.*

*David M. Rouse for defendant-appellees Jeff. G. Moore, Individually, and Jeff G. Moore Enterprises, Inc.*

ELMORE, Judge.

Paul Joseph Daniel and Lisa Horne Daniel (collectively, plaintiffs) appeal from entry of a consent judgment entered 10 October 2002 and an order filed 8 January 2003 denying their motion for a

new trial. For the reasons set forth herein, we vacate the consent judgment and reverse the trial court's order denying plaintiffs' motion for a new trial.

The record reveals that on 1 September 2000, plaintiffs filed a complaint against Jeff G. Moore and Jeff G. Moore Enterprises, Inc. (collectively, defendants) seeking damages for the allegedly faulty construction of plaintiffs' home in Wayne County, North Carolina.[1] The matter was calendared for trial in Wayne County Superior Court on 9 September 2002 before the Honorable Jerry Braswell. The parties appeared on that date, represented by counsel and prepared to proceed with trial. However, prior to commencing the trial, Judge Braswell held a lengthy pretrial conference in chambers with LeAnn M. Rhodes (Rhodes), the attorney retained by plaintiffs to represent them at trial, and counsel for defendants. The parties themselves did not participate in the pretrial conference, but their respective attorneys conferred with them during several breaks in the conference. After the conference, Judge Braswell pronounced in open court and in the presence of the attorneys that the attorneys had settled the case. Judge Braswell stated the terms of the settlement and requested that the attorneys prepare a written consent judgment.

Four days later, however, on 13 September 2002, Lisa Daniel sent Rhodes a brief communication via e-mail and fax which stated as follows: "I, Lisa Daniel, do NOT consent to the Order of September 9, 2002 handed down by Judge Braswell, and you do NOT have my authority to approve the wording of that Order." (emphasis in original). Thereafter, by letter to Rhodes dated 24 September 2002, plaintiffs indicated they had received a copy of the proposed consent judgment drafted by defendants' counsel, and noted their objection to certain terms contained therein. In this letter, plaintiffs also expressed frustration at their inability to speak with Rhodes over the previous two weeks and reiterated that they no longer consented to the settlement terms stated by Judge Braswell in open court on 9 September 2002. Plaintiffs' 24 September 2002 letter to Rhodes stated, in pertinent part, as follows:

> . . . . We feel we have no choice but to release you as our attorney of record as of today . . . and your employment, by us, is hereby terminated.

---

1. Also named as defendants were Wayne County and Joseph B. Nassef, Jr. However, plaintiffs settled all claims against these two defendants before 9 September 2002, the scheduled trial date.

Therefore, as I previously notified you in writing, via E-mail and fax, we do not consent to the order of Sept. 9, 02 handed down by Judge Braswell, and you do not have authority to approve the wording of that order. . . .

We are representing ourselves per se [sic]. We want . . . all of our records, exhibits, tapes and any other materials that are in your possession[] . . . returned to us as soon as possible.

Rhodes, in a letter dated 26 September 2002, acknowledged receipt of the foregoing communications and informed plaintiffs that, unless plaintiffs advised to the contrary, she would neither respond to a telephone call she had received from defendants' attorney regarding the proposed consent judgment nor address the discrepancies between the proposed consent judgment drafted by defendants' counsel and the judgment pronounced in open court by Judge Braswell. On 3 October 2002, Rhodes advised defendants' attorney by telephone that she no longer represented plaintiffs.

Despite the foregoing, defendants' attorney received a letter dated 4 October 2002 from Rhodes, stating that she had reviewed his draft of the proposed consent judgment and that she objected to certain terms. The letter also stated that Rhodes "would welcome the opportunity to discuss these discrepancies" and that Rhodes "look[ed] forward to receipt of the modified Judgment," and indicated that copies of the letter were sent to plaintiffs and to Judge Braswell. On 9 October 2002, a subsequent draft of the proposed consent judgment, with modifications as suggested by Rhodes, was marked "CONSENTED AND AGREED TO," signed by Rhodes, and sent to defendants' counsel by Rhodes via fax. The consent judgment was subsequently signed by Judge Braswell and entered on 10 October 2002.

On 21 October 2002, plaintiffs filed a "Motion for a New Trial or to Amend Judgment," pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 (2003). In support of their motion, plaintiffs argued that (1) the trial judge's biased conduct during the pretrial conference denied plaintiffs their right to a trial;[2] (2) plaintiffs did not actually consent to the proposed settlement or to entry of judgment on the terms pronounced by Judge Braswell in open court on 9 September 2002, or, in

---

2. We note that there was no recorded transcript of the *in camera* pretrial conference, and that the affidavits of plaintiffs, Rhodes, and defendants' attorney, each of which contained averments regarding Judge Braswell's conduct during the pretrial conference, were considered by the trial court.

the alternative, plaintiffs revoked their consent by their subsequent written communications informing Rhodes that she did not have authority to enter the proposed consent order on plaintiffs' behalf; and (3) the judgment contained vague and uncertain terms, rendering it incapable of execution.[3] The trial court denied plaintiffs' motion, finding that Rhodes' conduct evidenced plaintiffs' consent to entry of the proposed judgment, the terms of which were "sufficiently clear to be objectively enforced." Regarding plaintiffs' consent to the judgment, the trial court specifically found as follows:

. . . Rhodes[] did at one time after September 9, 2002, tell the defendants' attorney that she was no longer representing the plaintiffs, but, thereafter, she continued to confer with the defendants' attorney concerning the details of the consent judgment and sent plaintiffs a proposed copy of the consent judgment, which indicates that her representation of them did, in fact, continue, and additionally shows that they, at that time, still consented to the judgment.

The order did not address plaintiffs' contention regarding judicial bias.

Plaintiffs appeal from entry of the consent judgment and the subsequent order denying their motion for a new trial, contending that Rhodes acted without authority in consenting to entry of the judgment. "The granting or denial of a motion for new trial lies within the trial court's sole discretion." *Marley v. Graper*, 135 N.C. App. 423, 433, 521 S.E.2d 129, 136 (1999). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. . . . [A]nd will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). In the present case, our review of the record indicates plaintiffs withdrew their consent to entry of the judgment prior to the time that Rhodes, acting without authority, signed the proposed consent judgment and sent it to defendants' attorney on 9 October 2002. Accordingly, we hold that the trial court abused its discretion in denying plaintiffs' motion for a new trial.

Our Supreme Court has stated that "[t]he power of the court to sign a consent judgment depends upon the unqualified consent of the

3. The hearing transcript indicates that plaintiffs' main argument at the hearing concerned the issue of whether plaintiffs had ever given their consent to entry of the judgment, and if they had, whether they had revoked their consent.

parties thereto; and the judgment is void if such consent does not exist at the time the court sanctions or approves the agreement and promulgates it as a judgment." *King v. King*, 225 N.C. 639, 641, 35 S.E.2d 893, 895 (1945). This Court has previously stated as follows regarding entry of consent judgments:

> Without his client's consent, an attorney has no inherent author-
> ity to enter into a settlement agreement that is binding on his
> client. . . . Thus, the trial court's authority to enter the consent
> order hinges on *whether the defendants' counsel had authority
> to sign the order.*

*Royal v. Hartle*, 145 N.C. App. 181, 183, 551 S.E.2d 168, 170 (citations omitted) (emphasis added), *disc. review denied*, 354 N.C. 365, 555 S.E.2d 922 (2001); *see also Howard v. Boyce*, 254 N.C. 255, 263, 118 S.E.2d 897, 903 (1961) ("An attorney has no inherent or imputed power or authority to compromise his client's cause or consent to a judgment which gives away the whole corpus of the controversy . . . . an attorney must be so authorized.") Moreover,

> For a valid consent order, the parties' consent to the terms "must
> still subsist at the time the court is called upon" to sign the con-
> sent judgment. *If a party repudiates the agreement by with-
> drawing consent before entry of the judgment, the trial court is
> "without power to sign [the] judgment."*

*Chance v. Henderson*, 134 N.C. App. 657, 663, 518 S.E.2d 780, 784 (1999) (citations omitted) (emphasis added); *see also In re Estate of Peebles*, 118 N.C. App. 296, 298, 454 S.E.2d 854, 856 (1995) ("[A] consent judgment is void if a party withdraws consent before the judgment is entered."). The party challenging the validity of a consent judgment bears the burden of proving that it is invalid. *Milner v. Littlejohn*, 126 N.C. App. 184, 187, 484 S.E.2d 453, 456, *disc. review denied*, 347 N.C. 268, 493 S.E.2d 458-59 (1997).

In the present case, plaintiffs first contend that they never consented to the judgment as pronounced by Judge Braswell on 9 September 2002 following the pretrial conference. In support of this contention, plaintiffs argue that they were not in the courtroom during most of Judge Braswell's reading of the consent judgment's terms and therefore did not have an opportunity to hear and object to the findings of fact. Assuming this assertion to be true, it is nevertheless immaterial to the disposition of this appeal because the record indicates that Rhodes, as plaintiffs' attorney at the time, was present during the entire pronouncement of the judgment's terms on 9 Septem-

ber 2002 and consented on plaintiffs' behalf. *Boyce*, 254 N.C. at 263, 118 S.E.2d at 903 (an attorney is presumed to have apparent authority to make representations on his client's behalf). Our examination of the record reveals that plaintiffs consented, albeit reluctantly, to the settlement prior to the pronouncement of the consent judgment's terms in open court on 9 September 2002.[4]

However, the record also reveals that plaintiffs thereafter expressly revoked their consent to entry of the consent judgment prior to the time that Rhodes, acting on her own authority, purported to bind plaintiffs to it by marking the proposed consent judgment "consented and agreed to," signing it, and forwarding it to defendants' counsel on 9 October 2002. Lisa Daniels' fax and email communications to Rhodes on 13 September 2002 and plaintiffs' letter to Rhodes dated 24 September 2002 each stated, in clear and unmistakable language, that plaintiffs no longer consented to the judgment as pronounced in open court on 9 September 2002, and that Rhodes did not have authority to approve the terms of the judgment. Additionally, plaintiffs' 24 September 2002 letter discharged Rhodes from representation of plaintiffs. Rhodes acknowledged receipt of these communications in her letter to plaintiffs dated 26 September 2002, but nevertheless purported to act on plaintiffs' behalf by signing the consent judgment and forwarding it to defendants' attorney for entry by the trial court.

"North Carolina law has long recognized that an attorney-client relationship is based upon principles of agency." *Johnson v. Amethyst Corp.*, 120 N.C. App. 529, 532-33, 463 S.E.2d 397, 400 (1995). "[A]n agency can be revoked at any time before a valid and binding contract, within the scope of the agency, has been made with a third party." *Insurance Co. v. Disher*, 225 N.C. 345, 347, 34 S.E.2d 200, 201 (1945). A consent judgment is a contract between the parties entered, with the sanction of a court of competent jurisdiction, upon the court's records. *Milner v. Littlejohn*, 126 N.C. App. 184, 187, 484 S.E.2d 453, 455, *disc. review denied*, 347 N.C. 268, 493 S.E.2d 458-59 (1997).

Because we conclude that plaintiffs revoked Rhodes' authority to enter the consent judgment before final entry of the judgment upon

---

4. Lisa Daniel stated in her affidavit that before the pronouncement of judgment on 9 September 2002, Rhodes twice asked her outside the courtroom for authority to settle the case, and Lisa Daniel said "fine" or "whatever" each time. Paul Daniel also stated in his affidavit that he "shook [his] head up and down while shrugging [his] shoulders" in response to the same request from Rhodes.

the court's records, we hold that plaintiffs have carried their burden of proving the invalidity of the consent judgment. Accordingly, we conclude that the trial court abused its discretion by denying plaintiffs' motion for a new trial. We therefore vacate the consent judgment entered 10 October 2002, and we reverse the order denying plaintiffs' motion for a new trial entered 8 January 2003.

The judgment entered 10 October 2002 is

Vacated.

The order entered 8 January 2003 is

Reversed.

Judge CALABRIA concurs.

Judge BRYANT dissents.

BRYANT, Judge dissenting.

Because I conclude the trial court did not err in not voiding the consent judgment and denying plaintiffs' motion for a new trial, I respectfully dissent.

In the case *sub judice*, the trial court found Rhodes consented to the judgment pronounced by the court, and that

Rhodes[] did at one time after September 9, 2002, tell . . . defendants' attorney that she was no longer representing the plaintiffs, but, thereafter, she continued to confer with . . . defendants' attorney concerning the details of the consent judgment and sent plaintiffs a proposed copy of the consent judgment, which indicates that her representation of them did, in fact, continue, and additionally shows that they, at that time, still consented to the judgment.

In the instant case, the trial court's findings are supported by competent evidence and thus binding on appeal. *See Ledford v. Ledford*, 229 N.C. 373, 376, 49 S.E.2d 794, 796 (1948) (if supported by some evidence, the findings of fact made by the trial judge in determining whether a party gave consent to a judgment as entered are binding on appeal); *Royal v. Hartle*, 145 N.C. App. 181, 182, 551 S.E.2d 168, 170 (2001) (the trial court's findings when supported by competent evidence are binding on appeal).

DANIEL v. MOORE

[164 N.C. App. 534 (2004)]

Moreover, the decision to grant or deny a motion for a new trial lies within the sound discretion of the trial court. *Marley v. Graper*, 135 N.C. App. 423, 433, 521 S.E.2d 129, 136 (1999). The trial court's decision in this regard will not be overturned unless the decision was manifestly unsupported by reason. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985); *see Campbell v. Pitt County Mem'l Hosp.*, 321 N.C. 260, 265, 362 S.E.2d 273, 276 (1987) (" 'an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice' ") (citation omitted).

The record in this case, including the transcript and plaintiffs' affidavits, indicates Rhodes was in the courtroom during the trial court's pronouncement of the judgment and consented to it. Plaintiffs however later asserted they were not in the courtroom until the end of the proceeding and therefore did not have an opportunity to hear and object to the findings of fact. Assuming this assertion to be true, it is immaterial to the disposition of this appeal because Rhodes, as plaintiffs' attorney at the time, consented on their behalf. *See Howard v.* Boyce, 254 N.C. 255, 263, 118 S.E.2d 897, 903 (1961) (an attorney is presumed to have apparent authority to make representations on behalf of his client). Moreover, the record indicates plaintiffs agreed to the settlement, albeit reluctantly, prior to the pronouncement of judgment.[5]

The record further shows: Rhodes received Lisa Daniel's written communications prohibiting Rhodes from (1) approving any written consent judgment and (2) terminating Rhodes' representation of them; defendants' attorney was advised by Rhodes' letter that she no longer represented plaintiffs; defendants' attorney subsequently received Rhodes' letter indicating she had reviewed the proposed consent judgment, objected to certain terms, and expressed her anticipation of receiving a modified judgment from defendants' attorney; Rhodes' letter (dated 4 October 2002, five days before the trial court signed the consent order) also indicated copies of it would be forwarded to the trial court and plaintiffs; and Rhodes eventually signed the proposed judgment. Plaintiffs however argue Rhodes acted without authority.

---

5. In an affidavit, Lisa Daniel admitted that before the pronouncement of judgment, Rhodes twice asked her outside the courtroom to settle the action, and Lisa Daniel said "fine" or "whatever" each time in response to Rhodes. Paul Daniel also stated in his affidavit that at the time, he "shook [his] head up and down while shrugging [his] shoulders" in response to the same request from Rhodes.

In North Carolina, a court must consider the following principles when determining whether a consent judgment should be voided:

> (1) the general desirability that a final judgment not be lightly disturbed, (2) where relief is sought from a judgment of dismissal or default, the relative interest of deciding cases on the merits and the interest in orderly procedure, (3) the opportunity the movant had to present his claim or defense, and (4) any intervening equities.

*Royal*, 145 N.C. App. at 183-84, 551 S.E.2d at 171 (citations omitted).

Here, the judgment at issue stated it resolved all issues arising from the lawsuit between the parties and is a final judgment. *See Janus Theatres of Burlington v. Aragon*, 104 N.C. App. 534, 536, 410 S.E.2d 218, 219 (1991) (" '[a] final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court' ") (citation omitted). In addition, the evidence indicates Rhodes acted with the apparent authority of an attorney for plaintiffs.

> Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. "The determination of a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had[] under the circumstances conferred upon his agent."

*Bell Atlantic Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 774-75, 443 S.E.2d 374, 376 (1994) (citing *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 31, 209 S.E.2d 795, 799 (1974)). Rhodes' discussion with defendant's attorney about modifications to the consent order and her signing it were acts within the scope of an attorney representing a party. *See Howard*, 254 N.C. at 263, 118 S.E.2d at 903 (an attorney is presumed to have apparent authority to make representations on behalf of his client). *Cf. Heath v. Craighill, Rendleman, Ingle & Blythe, P.A.*, 97 N.C. App. 236, 243-45, 388 S.E.2d 178, 182-83 (holding the law firm was not liable for investments the client made through a member associate because the investments made were not related to the associate's legal representation of the client, and the associate did not have apparent authority to make said investments), *disc. review denied*, 327 N.C. 428, 395 S.E.2d 678 (1990). Therefore, based on her continuing actions on behalf of plaintiffs despite her

earlier statement to the contrary, defendants' attorney was justified in believing Rhodes had continuing authority to represent plaintiffs.

By signing the consent order, Rhodes led the trial court to reasonably believe she had authority to enter the consent judgment. Furthermore, despite the allegations in their affidavits, plaintiffs have failed to overcome the presumption that Rhodes had requisite authority to agree to the consent judgment.

In light of the above facts and our legal principles as to consent judgments, I would hold the judgment in this case was properly entered by the trial court.